WEEKS vs. CITY OF MILWAUKEE et al.

APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard November 1, 1859.]            [Decided January 4, 1860.

*Constitutional Law—Assessments—Taxes—Streets—Nuisance—Injunction.*

Where the city of Milwaukee levied special taxes upon the lots of W. for the purpose of building streets and sidewalks in front of the same: Held, that these assessments could be sustained on the ground that it was an exercise of the taxing power of the state and city, and was not a taking of private property for public use.

The constitutional provision, that "the rule of taxation shall be uniform," extends to all taxation by cities, towns and counties, in their exercise of the taxing power delegated to them by the state. The object of this provision was to protect the citizen against unequal and consequently unjust taxation.

"The uniform rule of taxation" provided for by Art. VIII., § 1, is applicable to municipal corporations notwithstanding the provision of Art. XI., § 3, requiring the legislature in establishing them to restrict their powers of taxation, so as to prevent abuses, &c. This last provision was designed to furnish a further protection.

Assessments of special taxes upon lots for the purpose of constructing streets and sidewalks in front of such lots cannot be upheld by the constitution of Wisconsin, under the rule of uniformity of taxation alone; but it can be, under the provision requiring the legislature to restrict the power of municipal corporations in making assessments.

The word "assessment," as used in Art. XI., § 3, of the constitution of the state of Wisconsin, has reference to the system of special taxation for municipal im-

Weeks vs. City of Milwaukee et al.

provements existing at the adoption of the constitution, and is a clear recogni-
tion of the existence of the power to make the special tax.

The provision of Art. XI., § 3, recognizes the power of special assessments in muni-
cipal corporations, and is so far a modification of the rule of uniformity, in Art.
VIII., § 1, as the system of assessment is a departure from that rule; and,
thereby, every lot may be compelled to build the street in front thereof, with such
exceptions as the law may provide.   The only remedy for abuses under this rule
is such restrictions as the wisdom of the legislature may impose on the exercise
of the power.

Where, by an act of the legislature, the farming lands of W. had been annexed to
the city of Milwaukee, and afterwards taxed at the same rate as other city prop-
erty to pay the debt of the city :   Held, that the act was constitutional, and the
taxation was legal.

The case of *Knowlton vs. Supervisors of Rock Co.*, 9 Wis., 410, considered and ap-
proved.

Where the assessors of the city of Milwaukee, in obedience to an ordinance of the
common council, omitted to assess property to the value of $150,000, which
ought to have been assessed, and that property was thereby exempted from tax-
ation :   Held, that such omission vitiated the whole tax.

Omissions to make assessments arising from mistakes of fact, erroneous computa-
tions, or errors of judgment on the part of those to whom the execution of the
taxing laws, is intrusted, do not necessarily vitiate the whole tax ; but an in-
tentional disregard of those laws, in such a manner as to impose illegal taxes on
those who are taxed, does.

The provision of the taxing laws, that where there has been an omission to tax
property, it may be taxed the proper amount the next year, refers to such omis-
sions as are constantly liable to happen, and does not invalidate the whole tax ;
but where the omission originated in an intentional departure from the law on
the part of all the authorities, it renders the tax illegal, and it cannot be cured
by that provision in the taxing laws.

Where the city of Milwaukee had taxed the lots of W. to abate a nuisance created
by the act of the city in the construction of streets, so as thereby to cause the
water to stand upon the lots :   Held, that the city has not the power to levy a
special tax on the same lots to pay for filling them up so as to prevent the water
from standing there ; and such tax if levied is illegal.

Where the taxes on the lands of W. have been illegally increased by reason of the
illegal exemption of other lands from taxation, an injunction will be granted to
restrain the sale of such lands for the payment of such illegal tax.

Where a tax has been illegally assessed on the lands of W. for the purpose of abat-
ing a nuisance created by the taxing power on the same lands, an injunction
will be granted to restrain the sale of such lands for the payment of such illegal
tax.

The case of *Goodall vs. The City of Milwaukee*, 5 Wis., 32, considered and ap-
proved.

This was an action commenced by Lemuel W. Weeks against the City of Milwaukee, the County of Milwaukee, and Garrett M. Fitzgerald, the county treasurer, to restrain the latter from selling the lands of Weeks for taxes. The complaint set forth that Weeks was the owner in fee simple of a large amount of real estate, consisting of fractional subdivisions of sections and town lots within the limits of the city of Milwaukee, which are particularly described, giving the several valuations. One tract of 39 acres, used exclusively for farming purposes, and which he never intended to have laid out into city lots, nor was there any call or demand for city lots at that place, had been annexed to the city limits by an act of the legislature, against his wish and consent. That this had been done at the request and procurement of interested parties, for the sole purpose of subjecting it to taxation for the purpose of paying the expenses and debts of the city. That the taxation of the property had become exceedingly burdensome, and much larger than it would have been had it not been annexed. That before the annexation of this and some of the other tracts to the corporation limits, the city was largely in debt, and that a portion of the taxes levied was for the purpose of cancelling this indebtedness. That the assessments of the city were grossly unequal, partial, burdensome and fraudulent; the assessors having knowingly and purposely assessed the property of other individuals located in the same block, lower than they had assessed the property of the complainant; and that they had knowingly and purposely omitted to assess the property known as the "Newhall House," and the land on which it stands, that is, three lots in the third ward of the city, and of the value of $200,000 ; and that the same was not included in the assessment roll for the year, nor any tax for state, county, school, city, or ward tax, levied upon them.

The complaint further set forth, that a special tax had been levied upon several of the lots, amounting to $498 75, $111 25 of which was assessed for the purpose of grading an alley adjoining them, and the balance, $387 50, for abating a nuisance of the lots, by filling them up, and which nuisance had been created by an act of the city in filling up a street in front of the lots ; also, several lots were taxed for cleaning the streets, and building sidewalks in front of the lots. All of which was unconstitutional. The board of supervisors of the county had levied a state, county and school tax on the

lands and lots as they had been assessed and returned. That all these several tracts had been assessed for city purposes, as well as for the several special taxes; and that the treasurer threatened to sell the lots for the special taxes, and the treasurer of the county to sell for the other taxes. Therefore the complaint prayed for an injunction to restrain the sales, &c., and a judgment declaring the taxes illegal and void.

The injunction order was allowed and served, with the complaint, on the 15th of June, 1858. On the 30th of June, the defendants procured a dissolution of the injunction; from which no appeal was taken. The defendants then answered the complaint, and showed:

1. That the defendants admit that Garrett W. Fitzgerald was the treasurer of the county of Milwaukee, and that Herman Schwarting was the treasurer of said city of Milwaukee, and that the plaintiff is a citizen of the state of Wisconsin, as stated.

2. That as to each and every allegation in the complaint, not hereinbefore specifically admitted, the defendants have not any knowledge or information sufficient to form a belief, and therefore deny the same, and ask the same benefit of this their answer as if they had demurred to the complaint for the insufficiency thereof.

3. That the defendants for further answer to the complaint, allege and submit that the plaintiff has an ample and complete remedy at law for each and all the grievances of which complaint is by him in his complaint made, without resorting to a suit in equity.

Whereupon the defendants demand judgment against the plaintiff for their costs and disbursements in this action, &c.

The cause was referred to John A. Savage, court commissioner, to take the proofs in the case, who made his report on the 5th of November, 1858; and on the 15th, the case was submitted to the circuit judge for a decision, who made the following order:

" This action was submitted on the last day or the late term without argument, with a request that a judgment might be entered *pro forma*, as it was important to obtain the ruling of the Supreme Court on the principles involved, at the ensuing term thereof. Let judgment be entered accordingly, dismissing the complaint in this cause."

From the judgment so entered this appeal is taken.

*Henry F. Prentis*, for the appellant, after answering the ob-

jection that the complainant had a perfect remedy at law, by reason of the union of the two courts of law and equity in one, *Hall vs. Delaplaine*, 5 Wis., 217, proceeded to show that he was entitled to the relief prayed for in this case, and also to the injunction, provided the complaint is substantiated by the proof in the case, and the taxes, or any portion of them, are illegal. *Burnett vs. City of Cincinnati*, 3 Ohio, 72 ; *Bank U. S. vs. Osborn et al.*, 9 Wheat., 738 ; *Scott vs. Onderdonk et al.*, 4 Kern., 9.

I suppose it will not be questioned that if any portion of the tax for which the property is to be sold, or for which it has been sold, is illegal, it must have the same effect upon the sale as though the whole tax were illegal. *Stetson vs. Kempton*, 13 Mass., 272 ; *Libby vs. Burnham*, 15 id., 144 ; *Drew vs. Davis*, 10 Vt., 506 ; *Elwell vs. Shaw*, 1 Greenl., 339 ; *Doe vs. McQuilkin*, 8 Blackf., 581.

2. It seems from the complaint, the admissions of the defendants and the evidence, that the property known as the "Newhall House" property, consisting of lots 4, 5 and 6, in the third ward, and the hotel standing thereon, within the corporate limits of the city of Milwaukee, and of the value of from one hundred and fifty to two hundred thousand dollars, was knowingly and purposely omitted to be assessed for taxation in the year 1857, and that no taxes of any kind, neither state, county, school, city or ward taxes, were levied on that property. The constitution and laws of the state required that this property should be assessed for taxation, as also did the city charter. The first section of chapter 8, in the city charter, provides, that "all property, real or personal, within the city, except such as may be exempt by the laws of the state, shall be subject to taxation for the support of the city government, and the payment of its debts and liabilities." Section 1 of Art. VIII, of the state constitution says : "The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe." The first section of chapter 15 of the Revised Statutes, in describing what property shall be liable to taxation, says : "All property, real and personal, within this state, not expressly exempted therefrom, shall be subject to taxation in the manner provided by law." By section 2 of chap. 8 of the city charter, it is made the duty of the assessors to make out a complete and accurate assessment roll, which shall contain, as near as may be, a description and the value of all the lands, lots, or par-

cels of land, and buildings on any lot or parcel of land, within said city, &c. This is imperative, and not directory.

There is no mistake about this matter. It is admitted that the omission was purposely made. And besides that omission we have the record evidence which gives the character of the omission. By an ordinance passed March 22, 1856, it is provided: "Sec. 2. In view of the great public benefit which the construction of said hotel (meaning the Newhall House) will be to our city, and to encourage its early completion, said hotel property is hereby exempted from all city and ward taxes and assessments for the year 1856 and 1857, provided said building shall be completed within eighteen months from the first day of May, A. D., 1856."

It was completed within the eighteen months. What then, we ask, is the effect of this purposed disregard of the law of the state by these assessors, in omitting to assess this property, and in acting under the direction of the common council of said city?

We answer, unhesitatingly, that its effect must be to render invalid the whole state, school, county, city, and ward taxes for said third ward, levied within said city of Milwaukee, for said year, 1857. *State vs. Platt*, 4 Zab., 108.

3. The legislature had not the authority to annex the homestead of the complainant to the city, and then tax it for city purposes without his consent, and thereby raise his taxes from $30 to $368, on the same property, which had been in no manner benefited by the annexation. *The City of Covington vs. Southgate*, 15 Ken. 491.

4. We claim that Weeks' sub-division of the north-west quarter of sec. 5, and the south forty acres in the north-west quarter of section 5, which property was annexed to and made a part of the city of Milwaukee, by an act of the legislature, approved March 18, 1856, cannot be taxed for the payment of debts incurred prior to the annexation.

5. "The south one-third of lot one, in block four, in the third ward, being twenty feet front, with the building standing thereon, is assessed at $4,000. The building on the adjoining twenty feet north, of equal, or more value, and the land on which it stands worth more than the first mentioned twenty feet, which last mentioned property is owned by another individual, is assessed at $3,700, for the same year, 1857. Both pieces of property were assessed by the same assessor."

6. There is a special tax or assessment on lots 8 and 9, in block 172, in the 4th ward, of $480,50, for abating a nuisance on them, by filling up the same, which nuisance was created by the act of the city in filling up the street and alley in front of, and by the side of them. The balance of said special taxes on said lots 8 and 9, was for grading an alley adjoining said lots. We find by referring to the testimony that their natural condition was on a side hill, and that prior to the grading of the street and alley, there was no water on them, but that it ran off in consequence of the situation or lay of the land. That in filling the street and alley the lots were left at least ten feet below the grade, and not having built any sewers in the street or alley, the water, in consequence of the filling, was turned in upon them, and then, in consequence of the waters standing on the lots, the city declared them nuisances, and ordered the nuisances to be abated by having the lots filled. The plaintiff, of course, did not obey the order, and the city did the work, and then taxed the lots for the abatement. For the collection of these taxes they now seek to sell, or rather have sold them. The city could not first create a nuisance, and compel the owner to pay for abating it. *Lacour vs. Mayor of New York*, 3 Duer, 406; *Radcliff vs. The Mayor, &c., of Brooklyn*, 4 Comst., 195; *McComb vs. The Town of Akron*, 15 Ohio, 474; *The Rochester White Lead Co. vs. The City of Rochester*, 3 Comst., 463; *Goodall vs. The City of Milwaukee*, 5 Wis., 32; *Baron et al., vs. Baltimore*, 2 Amer. Jurist, 203; *Rhodes vs. The City of Cleveland*, 10 Ohio, 159.

7. In relation to the special taxes assessed for cleaning streets. So far as the fact is concerned, we think the evidence shows that the work was never done, and therefore the taxes were fraudulently assessed.

8. The next and last point in this case, to which I wish to call the attention of the court, is the question of the constitutionality of the provisions in the city charter, which make the building and repairing, and cleaning streets and alleys and side-walks, chargeable to the lots fronting on and adjoining said streets, and alleys, and side-walks, and which affects certain special taxes we ask to be set aside.

This power cannot be sustained on principle, and is in violation of § 1, Art. VIII. of the constitution. *Hill vs. Higden*, 5 Ohio St., 243; *The City of Zanesville vs. Richards*, id., 589; *The People vs. Mayor of Brooklyn*, 4 Comst., 419; *Sut-*

*ton's Heirs vs. The City of Louisville,* 5 Dana, 28; *The City of Lexington vs. McQuillan's Heirs,* 9 id., 513; *Municipality No. Two vs. White,* 9 La. An. Rep., 441; *Cumming vs. Police Jury of Rapides,* id., 503.

*J. A. Malley,* for the county of Milwaukee, contended that this was a proper taxation of the complainant's property, and not a taking of private property for public use; and on this point he cited: *Williams vs. Detroit,* 2 Mich., 550; *Commonwealth vs. Alger,* 7 Cush. 53; *Bonsal vs. Lebanon,* 19 Ohio R., 518; *Scoville vs. Cleveland,* 1 Ohio State, 135; *Hills vs. Higdon,* 5 id., 243; *Matheny vs. Golden,* 5 id., 361; *Striker vs. Welley,* 7 Hill, 23. *New York vs, Colgate,* 2 Duer, 1; Blackwell on Tax Titles, p. 7, 13, 14, 523.

Upon the question of uniformity, it was urged that the term *uniform* as used in § 1, Art. VIII., of the constitution cannot be construed to import absolute equality, but only such an approximation to it as the class of men usually selected by the people of our state to perform the varied duties connected with the assessment and levy of taxes, by the exercise of ordinary judgment and business accuracy would attain. 6 Met., 513; 4 Zab., 108; 6 Pick., 100.

The complicated duties connected with the valuation of of property and levying taxes must be attended with frequent mistakes and omissions. The legislature of Wisconsin has provided ample remedies for all mistakes, neglects, omissions, &c. Rev. Stat., 1849, 139, § 1; id., § 24; chap. 15, § 26, Priv. L., 1849; id. § § 29 to 32, R. S., 1849; id. § 114; id. § 163; 1 Kent's Com., 461; 2 Cranch, 358; 12 J. R., 175.

The appellants objection against the validity of the taxes, is that there was "a purposed omission to assess the Newhall House property." There is no evidence of any intentional omission. It is alleged that the common council exempted the Newhall House and lots by ordinance, but it does not appear that the assessor was influenced by, or even knew of of the action of the council. The case of the *Exchange Bank vs. Hines,* is a strong case sustaining the legality of the tax nowithstanding the omission. 3 Ohio State R., 1.

The taking of said property into the city cannot alter the case in the matter of state, county, or school taxes; the property would be subject to those taxes the same *in* as *out* of the city.

Upon the point of the charge of fraud in assessments, there is no evidence; and if the allegations had been sustained by

evidence, it would not touch the county of Milwaukee or its treasurer, as it only applies to city taxes and assessments.

We say the injunction should not be granted, because there is no necessity for any such extreme measure, and because the complaint shows no necessity for the writ of injunction. Also, that although the code may have abolished the distinction between law and equity proceedings, still it does not and cannot abolish the conservative and precautionary principles which govern the granting of the writ of injunction. By computation, we find that the extra burthen imposed upon the appellant as his share of the tax chargable to the Newhall House, amounts to about $3 70 for city taxes, and about $1 82 for county taxes.

*George A. Woodward*, for the city of Milwaukee, upon the question of taking private property for public use, said : This objection, it will be perceived, is based upon section 13 of the 1st article of the constitution of Wisconsin, whose language it embodies, and it is a sufficient answer to it in a constitutional point of view, that this provision of the declaration of rights has exclusive reference to the exercise of the right of eminent domain, as contradistinguished from that of taxation. These are the two essential powers upon which the very existence of our social organization depends. Both are sovereign and indispensable, to a degree that, even though no mention were to be made of either in the organic law of a state, the very institution of an organized government, under whatever form, would call them into existence. *Providence Bank vs. Billings*, 4 Pet., 559 ; *McCullock vs. Maryland*, 4 Wheat., 360 ; *The Mayor, &c., vs. G. M. Cemetery*, 7 Md., 532 ; *Commonwealth vs. Alger*, 7 Cushing, 53 ; *Cheyney vs. Hooser*, 9 B. Mon., 340 ; *Sutton's heirs vs. Louisville*, 5 Dana, 28 ; *McQuillan's heirs vs. Lexington*, 9 Dana, 513 ; *Williams vs. Detroit*, 2 Mich., 550 ; *Bonsal vs. Lebanon*, 19 Ohio, 418 ; *C. W. & Z. Railroad vs. Clinton County*, 1 Ohio St., 102 ; *Scoville vs. Cleveland*, id., 135 ; *Hill vs. Higdon*, 5 id., 245 ; *Nichols vs. Bridgeport*, 23 Conn., 189 ; *Doe vs. Deavors et al.*, 11 Geo., 80 ; *Striker vs. Kelley*, 7 Hill, 23 ; *Owners, &c., vs. Albany*, 15 Wend., 376 ; *New York vs. Colgate*, 2 Duer, 1 ; *The People vs. Brooklyn*, 4 Comst., 424 ; Sedgwick on Stat. and Const. Law, 505–6 ; Blackwell on Tax Titles, pp. 7, 13, 14, 523 ; *Brewster vs. Hough*, 10 N. H., 138 ; *Kirby vs. Shaw*, 7 Pa. St., 258.

Not only is the whole power of taxation lodged in the leg-

islative branch of government, but the legislature may also delegate it, as well for special and local, as for general purposes, to a municipality or local sovereignty, subject only to such restriction as they may legally impose. *Sharp vs. Spier*, 4 Hill, 76; *Livingston vs. New York*, 8 Wend., 85; *Talbot vs. Dent*, 9 B. Mon., 530; *Stein vs. Mobile*, 24 Ala., 591; *Smith vs. Aberdeen*, 25 Miss., 458; Sedgwick on Statutory and Const. Law, 502.

On the rules of uniformity, he relied upon the decisions of *The Bank vs. Hines*, 3 Ohio St., 15; *Bonsall vs. Lebanon*, 19 Ohio, 422; *Lexington vs. McQuillan's heirs*, 9 Dana, 517; *Cheyney vs. Hooser*, 9 B. Mon., 345; *Goddard vs. Petitioners, &c.*, 16 Pick., 504; *Smith vs. Aberdeen*, 25 Miss., 458; *New Orleans vs. Duncan*, 2 L. An. R., 182; *City of Lafayette vs. Cummings*, 3 La. Ann. R., 673; *1st Municipality vs. Mannel*, 4 id., 328; *Heres vs. Powell*, 6 id., 586; *Albert vs. Brown*, 9 id., 64; *State vs. Lathrop*, 10 id., 398; *New Orleans vs. Commercial Bank*, id., 735; *Municipality No. 2 vs. Dubois*, id., 56; *Municipality No. 2 vs. Dunn*, id., 57; *State vs. Waples*, 12 id., 343; *State vs. Fuller*, 12 id., 344; Charter of the city of Milwaukee.

Section 3d, of article XI, of the Constitution, makes it the "duty of the Legislature to provide for the organization of cities and incorporated villages, and to restrict their powers of 'taxation,' 'assessment,' borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in assessments and taxation, and in contracting debts by such municipal corporations." Under this section the assessment is authorized. *Hill vs. Higdon*, 5 Ohio St., 243; *Williams vs. Detroit*, 2 Mich., 560; *Northern Liberties vs. St. John's Church*, 3 Pa. St., 107; *Canal Trustees vs. Chicago*, 12 Ill., 405; *Dean Richmond vs. City of Milwaukee*, Miller, J., in Dist. Court, Wis.; *Owners, &c., vs. Albany*, 15 Wend., 376; *The matter of Freeman St.*, 17 Wend., 649; *Thomas vs. Leland*, 24 id., 65; *Striker vs. Kelly*, 7 Hill, 23; *Town of G. vs. Connell*, 18 Barb., 615; *New York vs. Colgate*, 2 Duer, 1; *Louisville vs. Hyatt*, 9 B. Mon., 204; *Lexington vs. Louisville*, 9 Dana, 513; *The Mayor, &c., vs. Howard*, 6 Har. and John, 389; *Shaw vs. Dennis*, 5 Gilman, 405; *Nichols vs. Bridgeport*, 23 Conn., 189.

There is no provision in the constitution or laws of this state which requires that every variety of taxation, by whatever name designated, shall be " co-extensive with or extend

to all the taxable property of a municipality or local sovereignty," nor that every municipal tax or assessment shall be laid *ad valorem ;* such a plan would operate with manifest injustice upon a large proportion of its contributors.

All taxes levied for strictly municipal purposes, by towns and cities, are, in a measure, special and local, and no general provisions regulating the taxing power of the state at large, apply in such cases. *Shoalwater vs. Armstrong,* 9 Humph., 217 ; *New Orleans vs. Duncan,* 2 La. Ann., 183. Hence, it has been determined, in a variety of cases, that the exemption from taxation by general laws, of the lands and buildings of religious, literary, scientific and charitable institutions, will not operate to free them from those special assessments, levied by municipal corporations, for improving that portion of a street within the corporate limits, upon which they abut. *Lafayette vs. Orphan Asylum,* 4 La. Ann., 1 ; *Bank of New Orleans vs. City of New Orleans,* 12 id., 421 ; *Mayor, &c., vs. G. M. Cemetery,* 7 Md., 517 ; *State vs. Robertson,* 4 Zab., 504.

Upon the subject of abating the nuisances on lots 8 and 9, he said : It has long been a settled rule, that when a corporation is created by the proper authority, all the requisite powers for the accomplishment of its legitimate ends, attach by implication to the original grant. 3d Kent's Com., 8th ed., 299, notes A and B. Among the implied and indispensable powers which attach to cities, are to be included not only the establishment and regulation of streets, but the abatement of nuisances ; the expenses whereof, as in the case of street improvements, and upon the same general plan, may be charged to the premises immediately concerned and affected. *Cheyney vs. Hooser,* 9 B. Mon., 338 ; *City of Louisville vs. Hyatt,* 5 id., 202 ; *Mayor, &c., vs. Howard,* 6 Har. & John., *386 ; Hope vs. Doedrick,* 8 Humph., 1.

But as to this matter, the municipality of Milwaukee is not dependent even upon any implied powers, for a justification of its acts, however well defined and settled as a legal principle. Over all these things it has and exercises a discretionary supervision, and its authority is derived from the express terms of its act of creation. City Charter, ch. 7, sec. 3 and 8 ; *Wilson vs. New York,* 1 Denio, 600.

Upon the exemption of the Newhall House, &c. This was but the exemption of an unfinished improvement, and grew out of and but followed the custom, as old and broad as the

city itself, of omitting from the assessment roll all buildings
and improvements upon lots in an unfinished state; a custom
so well and generally understood and acted upon throughout
the city, as to form an undeviating rule, claimed upon the
one hand, and conceded upon the other.

.It is needless to add, that this rule is consonant with the
best theories of governmental support. A building in course
of construction has no value which forms a true basis of tax-
ation. Its materials are no longer merchandise, to be dis-
posed of at a profit; they afford no income, yield no rent.
Smith's Wealth of Nations.

The right of the legislature to make like emptions, and for
like considerations, and the legal obligation to adhere to them,
have been repeatedly affirmed. We append a few leading ca-
ses upon this point: *New Jersey vs. Wilson*, 7 Cranch, 164;
*Gordon vs. Tax App. Ct.*, 3 How. U. S., 133; *St. Bank vs.
People*, 4 Scam., 303; *Brewster vs. Hough*, 10 N. H., 138;
Tax Cases, 12 Gill & John., 117.

It is not pretended that the property of the appellant was
assessed above the rate per cent. which the law authorized,
for any of the purposes of taxation, and we submit, in view
of the circumstances and conditions of the said exemption,
that even if by a strict construction of the powers delegated
by the legislature to the city of Milwaukee, the authority to
exempt any species of property from taxation, does not exist;
yet when the city at large, acting through its delegates in
council, in good faith and for am ample equivalent, as in the
case at bar, does in fact make such exemption, it is neither
legal or equitable for a member of the corporation to with-
hold the payment of his quota of taxes duly assessed, upon
the plea of the illegality of the exemption. It may be that
a succeeding board of councilmen might have repudiated it,
on behalf of the city, and cause the property to be assessed
for the years in which it was omitted, without any redress on
the part of the owner, for want of legality in the exemption,
and perhaps the officers charged with assessing and collecting
taxes, would have been justified in treating the ordinance
above stated as a nullity, however inequitable or unconscion-
able such a course might be; but as between the municipality
and one of its constituent members, we apprehend no action
will lie upon the chancery side of the court. If permitted, it
would open the door to interminable difficulties, and the
wheels of government would be clogged at every turn. The

question is novel, and almost barren of authorities. The following cases will be found to favor the views which we have expressed : *Page vs. St. Louis,* 20 Mo., 136 ; *Ins. Co. vs. Yard,* 17 Penn. St., 331 ; *Williams vs. School Dist.,* 21 Pick., 75 ; *George vs. School Dist.,* 6 Met., 497 ; 4 Met., 601 ; *Wiggins vs. New York,* 9 Paige Ch., 18 ; *State vs. Quaife,* 3 Zab., 90.

But, independent of the foregoing views, there is no occasion to disturb, much less to annul, the proceedings of the assessors. No rights have been compromised, no interests destroyed. If the exemption were unauthorized, the deficit thereby created for the year 1857 may yet be made good, by following out the provisions of the statute, which open wide the door for the correction of any such error. R. S., chap. 18, § 27.

The point which is urged upon the court, that " taxes were levied upon such property for purposes for which said property was not liable to be taxed," is intended, we conjecture, to cover the alleged illegality in the annexation of appellant's property to the city of Milwaukee, and the subsequent taxation and assessment thereof for city and ward purposes.

Over this matter we apprehend the court has no jurisdiction. It does not sit to annul or revise the acts of the law making power, however unwise or inexpedient, as it would seem from the complaint in this case. Nor does it matter that the appellant " protested" against the act which brought him, with his homestead and his subdivision, into the corporate limits. It is sufficient that the legislature in the exercise of a proper discretion, passed the act annexing this property, and subjecting it to the same " laws, regulations and ordinances," governing the wards to which it became attached. Local Laws of 1857, p. 144.

This is, comparatively, a new question. In the course of the hurried examination which we have been compelled to make, we have not been able to find that it has come up for judicial examination in any other state than Kentucky, whose reports contain two cases, adjudged upon the precise issue which is here presented. *Cheyney vs. Hoover,* 9 B. Mon., 330 ; *Sharp vs. Dunaran,* 17 id., 223.

In opposition to the allowance of an injunction, he relied upon chap. 18, §§ 75 to 95, Rev. Stat., 1849 ; *Doe vs. Deavors,* 11 Geo., 79 ; *Williams vs. Detroit, supra;* §§ 154–5, chap. 18, R. S., 1849 ; *LeRoy vs. New York,* 4 J. C. R., 352 ; *Moores vs. Smedley,* 6 id., 27 ; *Wiggins vs. New York,* 9 Paige, 18 ; Sto-

ry's Eq., 896; Willard's Eq., 361–2; id., 380; Eden on Inj., 227, Waterman's note, 1; *Mayor, &c., of Brooklyn vs. Meserole*, 26 Wend., 130; 4 Kern., 540; *Attorney General vs. Nichol*, 16 Vesey, Jr., 341; *Van Doren et al. vs. New York*, 9 Paige, 388; *Loomis vs. Spencer*, 1 Ohio St., 153; *Stevens vs. Beekman*, 1 J. C., 318; *Jerome vs. Ross*, 7 J. C., 333; *Livingston vs. Hollenbeck*, 4 Barb., 16; *Van Rensselaer vs. Kidd*, id., 18; *Cox vs. Clift*, 2 Comst., 118; *Scott vs. Onderdonk*, 4 Kern., 12.

It may be claimed, however, that inasmuch as the distinction heretofore existing between actions at law and in equity, are abolished by sec. 8 of chap. 122, of the Rev. Stat., and were so abolished before the commencement of this action, the court should take jurisdiction over it, and grant the relief prayed; but this position, if it could be sustained, would only embarrass the appellant, inasmuch as a court of exclusive common law jurisdiction is not empowered to issue the writ of injunction at all. This is a distinctive feature of a court of equity, and by whatever name the tribunal may be called in whose hands this power is lodged, it is, nevertheless, the peculiar exercise of chancery jurisdiction. *Livingston vs. Moore*, 7 Peters, 546.

At most the code has only abolished the old distinctive forms of pleading; had they attempted more, the constitution would have interposed its forbidding mandate.

They have neither enlarged nor diminished the powers of the court, as to either matters of law or equity, and the principles which have always governed and distinguished the two systems, remain the same, and the same judgments and decrees are arrived at now as formerly, under different names and forms. Nor does it matter that in this state we have no courts of chancery, as distinct from court of law, so long as the jurisdiction remains unimpaired. Voorhies Code, 1857, 210, note g.; Whittaker's Practice, vol. 1, p. 306–7–8; *Tuttle vs. Smith*, 14 How. Pr., 395; *Voorhies vs. Child's ex'r*, 3 Smith, N. Y., 357.

But we go further, and insist that not only has the appellant failed to bring himself within any known rule of equitable interference, but his case comes short of any wholesome precedent which has come under our notice, of a revision and determination of like questions upon certiorari in courts of law. In denying their jurisdiction, where it was unquestioned, the courts of England and of this country, have placed such denial upon the ground of the *public inconven-*

*ience* which would ensue, from any interference with the duties of such of the subordinate officers of government as are invested with discretionary powers, especially as regards the matter of assessment and taxation, which should not be interrupted for any lighter cause than the violation of the organic principle upon which it rests. *Lawton vs. Cambridge,* 2 Caines, 181; *Stafford vs. Albany,* 6 John. 4; *People vs. Queens,* 1 Hill, 195; *People vs. New York,* 2 Hill, 12; *Matter of Mt. Morris Square,* 2 Hill, 14; *People vs. Alleghany,* 15 Wend., 198; *Ex Parte Mayor of Albany,* 23 Wend., 277; *Railroad Company vs. Canaan,* 16 Barb., 249; *Weaver vs. Davendorf,* 3 Denio, 119; *People vs. Brooklyn,* 4 Comst., 44.

*By the Court,* PAINE, J. This action was brought by the appellant to restrain the sale of a large quantity of real estate, for taxes, upon several alleged grounds of illegality. A large share of the real estate consisted of city lots, and a corresponding share of the taxes was for assessments against these lots, for building streets, sidewalks, &c., under the charter of the city.

The most important objection urged against their legality is, that the provisions of the charter itself authorizing these assessments, are a violation of the constitutional provision, that " the rule of taxation shall be uniform." I have no doubt, if these assessments are to be sustained at all, that it must be done upon the ground that they are an exercise of the taxing power. It is true, there are many cases in which it has been said that they are not taxes; but when Justice Barculo, in *The People vs. Brooklyn,* 6 Barb., 209, carried out this doctrine to its logical result, and held that not being taxes, they were the taking of private property for public use, without compensation, the court of appeals, in order to avoid his conclusion, were compelled to uphold them, as an exercise of the taxing power. 4 Coms., 419.

I have also no doubt that the constitutional provision that " the rule of taxation shall be uniform," extends to taxation

by cities, towns, and counties, exercising, as they do, a portion of the sovereign power delegated to them by the state. It is true, as I had occasion to contend in the case of *Clark vs. The city of Janesville, supra,* 165, that most of the provisions of Article VIII, where this is found, apply to the action of the state as such, and not to the action of its minor political divisions. A city or county is not the state ; and if it contracts a debt, that is not a state debt. But when either exercises the taxing power, it is acting for the state, as taxation is an attribute of sovereignty. Where, therefore, the constitution requires " the rule of taxation to be uniform," I think it extends to all taxation by the state, whether acting directly, or by delegating its authority to political corporations. The object of this provision was to protect the citizen against unequal, and consequently unjust taxation. And this object would clearly be defeated if the state, by delegating the power, placed its agents beyond the restriction of the rule. And this view, I think, is not impaired by the provision of Art. XI, § 3, requiring the legislature, in establishing municipal corporations, " to restrict their powers of taxation so as to prevent abuses," &c. Restrictions may be, and undoubtedly are necessary, to prevent abuses which might not amount to violations of the rule of uniformity. There may be a uniform abuse of the taxing power, by reckless and improvident management on the part of these local authorities; and I think the provision last mentioned was designed to furnish a further protection, in addition to that furnished by the rule of uniformity.

Believing, therefore, that these assessments are an exercise of the taxing power of the state, and that the rule of uniformity extends to taxation by corporations, I should find it impossible to uphold them, if the provision requiring the rule to be uniform was the only provision in the constitution bearing upon the question. I think with Chief Justice Bart-

ley, in *Bank vs. Hines*, 3 Ohio St., 15, that " Uniformity in taxation implies equality in the burden of taxation." This equality in the burden constitutes the very substance designed to be secured by the rule. But the principle upon which these assessments rest is clearly destructive of this equality. It requires every lot owner to build whatever improvements the public may require, on the street in front of his lot, without reference to inequalities in the value of the lots, in the expense of constructing the improvements, or to the question whether the lot is injured or benefitted by their construction. Corner lots are required to construct and keep in repair three times as much as other lots ; and yet it is well known that the difference in value bears no proportion to this difference in burden. In front of one lot, the expense of building the street may exceed the value of the lot, and its construction may impose on the owner additional expense, to render his lot accessible. In front of another lot, of even much greater value, the expense is comparatively slight. These inequalities are obvious ; and I have always thought that the principle of such assessments was radically wrong. They have been very extensively discussed, and sustained upon the ground that the lot should pay because it receives the benefit. But if this be true, that the improvements in front of a lot are made for the benefit of the lot only, then the right of the public to tax the owner at all for that purpose fails ; because the public has no right to tax the citizen to make him build improvements for his own benefit merely. It must be for a public purpose ; and it being once established that the construction of streets is a public purpose, that will justify taxation, I think it follows, if the matter is to be settled upon principle, that the taxation should be equal and uniform, and that to make it so, the whole taxable property of the political division in which the improvement is made, should be taxed by a uniform rule, for the purpose of its construction.

But in sustaining these assessments, when private property was wanted for a street, it has been said the state could take it, because the use of a street was a public use; in order to justify a resort to the power of taxation, it is said the building of a street is a public purpose. But then, having got the land to build it on, and the power to tax by holding it a public purpose, they immediately abandon that idea, and say that it is a private benefit, and make the owner of the lot build the whole of it. I think this is the same in principle, as it would be to say, that the town in which the county seat is located, should build the county buildings, or that the county where the capitol is, should construct the public edifices of the state, upon the ground that, by being located nearer, they derived a greater benefit than others.

If the question, therefore, was, whether the system of assessment could be sustained upon principle, I should have no hesitation in deciding it in the negative. I fully agree with the reasoning of the supreme court of Louisiana, in the case of *Municipality No. 2, vs. White et al.,* 9 La. An. Rep., 447, upon this point.

But the question is not whether this system is established upon sound principles, but whether the legislature has the power, under the constitution, to establish such a system. As already stated, if the provision requiring the rule of taxation to be uniform, was the only one bearing upon the question, I should answer this also in the negative. But there is another provision, which seems to me so important, that it has changed the result to which I should otherwise have arrived. That provision is sec. 3, of Art. XI, and is as follows: " It shall be the duty of the legislature, and they are hereby empowered, to provide for the organization of cities and incorporated villages, and to restrict their power of taxation, *assessment,* borrowing money, contracting debts, and loaning their credit, so as to prevent abuses in *assessments* and taxation,

and in contracting debts, by such municipal corporations."

It cannot well be denied, if the word "assessment," as used in this section, had reference to this established system of special taxation for municipal improvements, that then it is a clear recognition of the existence and legality of the power. Had it such meaning? I think it had, for the following reasons: This system of special taxation, upon the basis of supposed special benefits, had existed for years, and given rise to much discussion and litigation in the older states. Although, in itself, being strictly an exercise of the taxing power, yet it has been frequently assumed otherwise, and has been so far separated and distinguished from general taxation, as to have obtained a distinct name, and that name assessment. As such it has been known and described for a number of years in the older states, in their contracts, laws, and constitutions. A clear distinction between it and other taxation was established. It seems to me, therefore, that when the constitution expressly recognizes the "power of assessment" in municipal corporations, it had reference to this system which had been so long known and described under that name. It was suggested on the argument that it meant the assessment of taxes generally. But I cannot see how this idea can be sustained when the word "taxation," which includes all the steps necessary to taxation, immediately precedes the word "assessment." It is said the legislature may "restrict their power of taxation, assessment, borrowing money," &c. Now, to say that the word "assessment," as here used, had reference to the assessment of taxes generally, is to make the instrument guilty of a useless, as well as awkward repetition. Having first covered the whole ground by the word "taxation," it would then go back to go over a part of it again, by the word "assessment," which is only one step in taxation. Such a use of language would be exceedingly constrained and unusual in any instrument, and

particularly so in a constitution which usually deals in general terms, without going into details. If any tautology at all was to be looked for there, it should be in the use of some word of equivalent meaning to the one already used, and not of one expressing only a small part of it. I think, also, that the word "assessment," having reference to the general assessment of taxes, has never in common practice been used alone, as expressing that idea. On the contrary, where that is the idea to be conveyed, it is said, "the assessment of taxes," as men say, "the levying of taxes," or "the collection of taxes." But it has an established meaning when used alone, and that is this specific taxation. The word "assessment," then, includes all the steps necessary to this taxation, just as the word "taxation" includes all necessary to taxation generally. And when I find the constitution recognizing in municipal corporations the power of "taxation *and* assessment," I cannot resist the conclusion that this latter word had reference to that particular species of taxation known as a whole by that name. And if it did, it is a clear recognition of the power, and the question here being only as to the power, is conclusively determined by it.

The same effect was given to the same clause in the constitution of Ohio, by the supreme court of that state, in a recent decision in the case of *Hill vs. Higdon*, 4 Ohio St., 243. And the reasoning of Chief Justice Ranney upon the question, I think it impossible to answer.

This provision, then, recognizing the power of assessment in municipal corporations, is so far a modification of the rule of uniformity, as the system of assessment is a departure from that rule. And the principle of it being, as before stated, to compel every lot to build the street in front of it, with such exceptions as are usually provided in cases of extraordinary expense, and which exist in the charter of Milwaukee, it cannot be said that under the constitution con-

struing the two sections together, and giving due effect to both as we are bound to, the legislature has not the power to authorize these assessments. For whatever abuses may be practiced under it, and they are doubtless great, the only remedy is in such restrictions as the wisdom of the legislature may impose on the exercise of the power, and for every citizen of these corporations to faithfully discharge his duty as such, and give necessary attention to the administration of public affairs, and not leave them to the exclusive management of plundering mercenaries, and then groan under the oppressions that result.

Another alleged ground of illegality is, that certain farming lands of the plaintiff, which had never been laid off into lots, and were not needed for city purposes, had been annexed to the city by an act of the legislature, and afterwards taxed at the same rate as other city property. I think this objection resolves itself entirely into a question whether the legislature has power to annex adjoining territory to a municipal corporation. Because, if such power exists, and this land *was* annexed, it seems very clear that it must afterwards be taxed by the same rule as other property in *the* political division where it then belongs. The rule of uniformity would require this. And we have held at the present term, in the case of *Knowlton vs. Supervisors of Rock Co.*, 9 Wis., 410, that no discrimination could be made in such case, between lands in the same taxing district, so that a part should be taxed at one rate upon their value, and the rest at another. And this seems so clear, that while counsel apparently conceded that the legislature might annex the lands for some purposes, he yet claimed that they could not do it for taxing purposes, but for these it was still a part of the town in which it was previously located; but I think this position cannot be sustained. Such a rule would be impracticable, and to sustain such a double ambiguous character for any district, must lead to

great confusion and uncertainty. If the power exists to annex, when it is exercised, the district must be annexed for all purposes. Whether it is a wise or just exercise of the power, courts cannot inquire. Those are questions for the legislature. Parties owning lands upon the borders of cities, must hold them subject to their disadvantages, as well as advantages. If when thus annexed, they are subject to undue burdens, this is, perhaps, in some measure compensated by the fact that before being annexed they had long enjoyed great advantages from their vicinity to a prosperous city, without contributing anything towards the burdens of building it.

But an objection is made to the legality of the general tax of that year, which I am compelled to sustain. It appears from the case, that several lots in the city upon which the Newhall House was in process of erection, of the value of from $150,000 to $200,000, were purposely omitted to be taxed, and no state, county, city, ward, or school tax levied or assessed upon them. It appears from the complaint and stipulation of the parties, that this omission was intentional on the part of the city authorities. And it was conceded on both sides, that an ordinance was passed by the common council expressly exempting that property from taxation for the years 1856 and 1857, "in view of the great public benefit which the construction of the hotel would be to the city."

I have no doubt this exemption originated in motives of generosity and public spirit. And perhaps the same motives should induce the tax payers of the city to submit to the slight increase of the tax thereby imposed on each, without questioning its strict legality. But they cannot be compelled to. No man is obliged to be more generous than the law requires, but each may stand strictly upon his legal rights.

That this exemption was illegal, was scarcely contested. I shall therefore make no effort to show that the common coun-

cil had no authority to suspend or repeal the general law of the state, declaring what property shall be taxable and what exempt. But the important question presented is, whether, conceding it to have been entirely unauthorized, it vitiates the tax assessed upon other property? And upon this question I think the following rule is established, both by reason and authority. Omissions of this character, arising from mistakes of fact, erroneous computations, or errors of judgment on the part of those to whom the execution of the taxing laws is entrusted, do ·not necessarily vitiate the whole tax. But intentional disregard of those laws, in such manner as to impose illegal taxes on those who are assessed, does. The first part of the rule is necessary to enable taxes to be collected at all. The execution of these laws is necessarily entrusted to men, and men are fallible, liable to frequent mistakes of fact and errors of judgment. If such errors on the part of those who are attempting in good faith to perform their duties, should vitiate the whole tax, no tax could ever be collected. And therefore, though they sometimes increase improperly the burdens of those paying taxes, that part of the rule which holds the tax not thereby avoided, is absolutely essential to a continuation of government. But it seems to me clear that the other part is equally as essential to the just protection of the citizen.. If those executing these laws may deliberately disregard them, and assess the whole tax upon a part only of those who are liable to pay it, and have it still a legal tax, then the laws afford no protection, and the citizen is at the mercy of those officers, who, by being appointed to execute the laws, would seem to be thereby placed beyond legal control. I know of no considerations of public policy or neces·sity, that can justify carrying the rule to that extent.

And the fact that in this instance the disregard of the law proceeded from good motives, ought not to affect the decision of the question. It is a rule of law, that is to be established ;

and if established here, because the motives were good, it
would serve as a precedent, where the motives were bad, and
the power usurped for purposes of oppression.

In *Henry vs. Chester*, 15 Verm., 460, the court says: "It is
indispensable to the legality of any tax imposed by the town,
that it should have been made upon a list of the polls and
rateable estate of the inhabitants, in substantial and *bona fide*
compliance with the requisitions of the statute." And again,
"Upon two grounds then, we think this was a void list. 1.
The plain and obvious requisitions of the statute in regard to
making up the list, were disregarded both by important and
essential *omissions*, and by *arbitrary additions*, without even
the color of right or legal warrant. If this may be done, and
still the list be regarded as legal, so might it with equal pro-
priety, if the entire real estate in town were omitted, or in-
serted wholly at random, without even the form of an ap-
praisal."

The court also quotes the following rule as stated by Chief
Justice Shaw in *Torrey vs. Milburry*, 21 Pick, 65: "One rule
is very plain and well settled, that all those measures which
are intended for the security of the citizen, for securing an
equality of taxation," &c., "are *conditions* precedent, and if
they are not observed, he is not legally taxed, and he may re-
sist it." True, the court then adds, as a qualification of the
general proposition, "that these measures, in order to become
'conditions precedent,' must be such matters as enter into the
frame work of the assessment, and affect its principles and not
its detail merely." But it is evident from the remark before
quoted, that they considered "important and essential *omis-
sions*," "without the color of right or legal warrant," as hav-
ing such effect. And it seems very evident that they would
have. Because one of the essential elements of the validity
of a tax is, that it should be assessed upon a list embracing
the taxable property of a district, made out with as much ac-

curacy as results from a *bona fide* attempt on the part of those who make it, to fulfill their duty according to law. And when such a list is not had, but instead of it one in which those whose duty it was to make it, have intentionally included only a part of the taxable property, and left out an important part, the essential basis of a legal tax fails, and the necessary result is a destruction of that "equality of taxation," all the "measures" to secure which, in the language of Chief Justice Shaw, are "conditions precedent" to the legality of the tax.

In the subsequent case of *Spear vs. The Town of Braintree*, 24 Verm·, 414, the same rule is reasserted, though in that case, they held the error complained of to be a mere error in judgment, in a *bona fide* attempt to fulfill the duties of the office according to law. And they distinguish it from the case of *Henry vs. Chester*, by saying : "That case was decided, as it was, chiefly upon the ground that the defects in the list could not be fairly regarded as accidental or *bona fide*.

In *The State vs. Brannin*, 3 Zab. N. J., 484, it was held, that where an assessment was made in the city of Trenton for city and county purposes, a separate poll tax being required by law for the city tax, and only one poll tax was assessed, the whole assessment was void.

In the subsequent case of *The State vs. The Collector of Jersey City*, 4 Zab., 108, the assessor had omitted to assess the churches, and the court held that it did not avoid the whole tax. But they place it upon the ground that it was a practice that had universally prevailed in the state, and in accordance with a contemporaneous construction of the law, "which they would probably have sanctioned had the question been formerly raised." It is true they add that for an omission to assess property really taxable, the assessment ought not to be held void, but that it is a matter to be left to the vigilance of the assessor. But they qualify this by

adding, "unless it be in cases involving a palpable and greatly injurious disregard or misconstruction of plain require-ments of the law.

But the counsel for the city rely strongly on the case of *Page vs. The City of St. Louis,* 20 Mo., 136. In that case an act of the legislature had established a system of sewer-age in St. Louis, and provided that the real estate in each district should be taxed annually to pay the debt, for which the city was authorized to issue its bonds. The city passed an ordinance for the creation of a sewerage fund, and provid-ing that any of the tax payers, who would pay into this fund such proportion of the whole debt as the assessed valua-tion of his taxable property bore to the whole assessed valu-ation in his district, should be thereafter exempt. A certain party had availed himself of this privilege, and afterwards placed further improvements on his property, rendering it more valuable, and it was no longer taxed for the sewerage debt. The plaintiff, who was taxed, complained that this exemption vitiated his tax. But the court decided against him, expressly on the ground that it did not appear that his tax was at all increased by the exemption, nor that the party who had advanced his proportion of the whole debt had not paid all that he ought to pay.

But this case is entirely different, for here it is conceded that the plaintiff's tax, as well as that of all the other tax pay-ers was increased, by the omission of the Newhall House property. It is true the court indulges in some general re-marks on the inconvenience of arresting the proceedings of a city, and close by saying: "The right of a corporation *de facto* will be enforced. It is no defense to the claim of a corporation that it has violated its charter." If by this it was only meant that when a corporation is enforcing a legal claim, it is no defense to say it has violated its charter in some other matter; that may be conceded. But if it was

meant to say, that when a corporation is enforcing an illegal claim, which is itself a violation of its charter and the law, and works injustice upon the defendant, it is no defense to show such violation, I, for one, must be permitted to dissent. I do not understand that even to avoid a suspension of corporate proceedings, it is proper to break down all barriers against illegal taxation, and say that a city may enforce the collection of an illegal tax just as well as though it were legal.

In *Wiggins vs. New York*, also cited, the decision is only that the court of chancery would not interfere on account of errors of judgment in the commissioners assessing benefits and damages on opening streets, the proceedings having been regular. And in examining some of the alleged irregularities, the court sustained the proceedings on the ground that they did "not increase the assessments" upon others, implying, if they had, they must be held illegal.

The case of *The Ins. Co. vs. Yard*, 17 Penn. St., 331, was evidently a case of omission of a part of the taxable property from mistake or ignorance of the fact on the part of the assessors. The language of the court contemplates only such omissions, and contains nothing which shows they would have held the same in regard to an intended omission on the part of all the authorities levying and collecting the tax of a large portion of taxable property, and assessing its proportion upon the other tax payers.

In *Williams vs. School District*, 21 Pick., 75, the assessors had omitted to tax one of the inhabitants of the district because he was very poor, and they expected he would soon come upon the town. The court say, "If this was done through error of judgment, or any error or mistake of the law in this respect, it does not invalidate the whole tax, and the case shows nothing more." I understand the error of judgment here referred to, to mean only such errors on the part

of officers as to what the law required of them, and not an error of judgment by which, knowing what the law was, they supposed they had a right to repeal or suspend it. It cannot be said here that the omission occurred from an error of judgment, by which it was supposed the Newhall House property was not taxable by law. The very fact of passing an ordinance to exempt it, implies knowledge that it was taxable. The only error of judgment here, was in supposing they had a right to suspend the law, and relieve a part of the taxable property, and impose the additional burden on the rest.

Nor do I think that provision of the law, that where there has been an omission to tax property, it may be taxed the proper amount the next year, should change the result. That evidently refers to such omissions as are constantly liable to happen, but which do not invalidate the tax assessed. But where the omission originates in an intentional departure from the law on the part of all the authorities, and is of such a character as renders the tax illegal, I do not think this provision can cure it. For it cannot be assumed that those who paid the illegal tax would continue tax payers long enough to get back, substantially, what they had paid, under the operation of this provision. The only question, in my judgment, is whether the tax is legal or not.

I am also of the opinion that the tax assessed against the plaintiff's lots to abate a nuisance, which, it appears, was created entirely by the act of the city, in so constructing a street as to cause the water to flow and remain upon the lots, which it would not otherwise have done, is illegal. I cannot recognize the right of a corporation to create a nuisance on the lot of an individual. But to create the nuisance, and then tax him to abate it, is a double wrong. I shall not attempt any examination of the question upon authority, but I am satisfied such a right cannot be sustained. I think this

conclusion results from the reasoning of Mr. Justice Smith, in *Goodall vs. Milwaukee*, 5 Wis., 32, which I fully approve. And until I am prepared to say that private rights must yield, even to the extent of total destruction, rather than place any impediment in the way of whatever proceedings corporations may see fit to take, I cannot say that a city may create a nuisance on the lot of a citizen without making him any compensation for the damage, and then tax him to abate it.

We were pressed, as courts always are on such occasions, to make a decision that would avoid the inconveniences resulting from holding the tax illegal. Those inconveniences may not be as great as was supposed. It would not follow from such a decision that those who had voluntarily paid it could recover it back. But whatever they may be, I am sure they cannot exceed the evils of holding that the citizen has no protection against illegal taxation. Courts have too frequently yielded to such appeals, and to avoid some immediate inconvenience, have decided cases differently from what they otherwise would, overlooking the more remote, but at the same time greater evils, of bad precedents, in the introduction of a pernicious principle into the administration of justice.

I think the plaintiff was entitled to an injunction restraining the sale of his lands for the general tax, which was increased by the illegal exemption, and for the nuisance tax, but not for the other assessments, and that the judgment should be reversed with costs.

The judgment is reversed, and cause remanded for further proceedings.