## HERSEY VS. THE BOARD OF SUPERVISORS OF MILWAUKEE COUNTY, and others.

The *intentional* omission of property liable to taxation from the assessment roll, invalidates all taxes levied thereon, whatever may have been the opinion or judgment of the assessor as to its liability to assessment and taxation, or the motives that induced him to omit it.

The *unintentional* or accidental omission of property liable to taxation from the assessment roll, will not invalidate a tax levied thereon. The case of *Weeks vs. Milwaukee*, 10 Wis., 240, explained and followed, and the cases of *Kelley vs. Corsan*, 11 Wis., 1, *Mills vs. Gleason*, 11 Wis., 497, and *Warden vs. Supervisors, &c.*, 14 Wis., 618, stated and explained.

Where property liable to taxation in one ward of a city, is *intentionally* omitted from the assessment roll by the city assessors, *ward* taxes levied according to a

part of said assessment roll, on property situated in *other wards* of the city are not thereby invalidated.

Where city lots have been sold for the amount of several distinct and separate taxes assessed on each of them, one or more of which taxes are valid, and the rest void, and the owner of the lots brings an action to set aside such sale and prevent the execution of tax deeds thereon, and the amount of the tax or taxes that are legal is made to appear, he must pay that sum before he can obtain relief against the illegal taxes.

Where a judgment is modified on appeal, on a point not made in the court below, costs will not be awarded in this court, to either party.

APPEAL from the Circuit Court for *Milwaukee* County.

Action to restrain the execution and delivery of tax deeds, on a sale of lot six in block 146, in the *fourth* ward of Milwaukee, and lot seven in block 31, in the *seventh* ward, for state, county, city and ward taxes, for the year 1857, and to have the certificates of sale cancelled.

There was a ward tax assessed on each of said lots in the wards in which they were respectively situated, and on one of them a special ward tax, and each of said lots was sold for the entire amount assessed on it for state, county, city and *ward* taxes, there being but one sale of each lot. The ground relied on for relief was, that the assessors for the city of Milwaukee for the year 1857, contrary to their duty, knowingly and purposely omitted to assess, or place on the assessment roll of said city for that year, the property known as the Newhall House, and the land upon which it was situated, in the *third* ward of said city, of the value of $150,000, which was then and still is owned by a person other than the plaintiff, and that there were no taxes levied on that property for the year 1857, whereby the taxes of the plaintiff on his lots were increased beyond their just and legal amount. The action was brought against the board of supervisors of *Milwaukee* county, the clerk thereof, the city of Milwaukee and the treasurer thereof, and James B. Martin, owner of the said tax certificates.

The answer denied that the assessors, contrary to their duty, and knowingly or purposely omitted to assess, list, or place upon the assessment roll the said Newhall House property,

and alleged that the house was, at the time of the assessment, but partially erected, and the lots, material, &c., were not then of the value of more than $10,000, and that the said Newhall House was not then a "building" within the meaning of sec. 2 of chap. 8 of the charter of said city, and was not subject to assessment and taxation ; that it had always been the uniform belief and understanding among assessors in the city of Milwaukee, and throughout the state, and wherever taxes were levied and assessed on real estate and the improvements thereon, under laws similar to those then in force in the city of Milwaukee, that buildings in the process of erection and remaining unfinished and unoccupied at the time of making the assessment, were not subject to assessment and taxation, and were not to be placed upon or valued in the assessment rolls as buildings upon the real estate on which the same were being erected, and that the assessors omitted the same in conformity with their duty under the laws of the state, and with the uniform understanding and practice of listing officers in said city and state ever since the adoption of the state constitution.

That the common council of the city of Milwaukee for the purpose of assuring the owner of the Newhall House property that it should, in no event, be subjected to taxation for *city and ward purposes* during the years 1856 and 1857, passed an ordinance on the 22d day of March, 1856, whereby they ordained, among other things, as follows :

"Sec. 2. In view of the great public benefit which the construction of said hotel will be to our city, and to encourage its early completion, said hotel property is hereby exempted from all *city and ward taxes and assessments* for the years 1856 and 1857 ; provided, said building shall be completed within eighteen months from the first day of May, 1856;" but that it never was the purpose or intent of the common council, or of the assessors of said city, or of any of the city officers, in 1856 or 1857, either by said ordinance, or in any other man-

ner, to exempt said lots four, five and six, or either of them, or anything subject to taxation under the laws of this state, and situate thereon, from taxation for state, county and school purposes, in like manner as other property.

It was further alleged that the common council of said city of Milwaukee, passed said ordinance in good faith, honestly believing that they had the legal power and authority to pass the same, and to relieve the said Newhall House property from city and ward taxes and assessments, as in said ordinance attempted, if in their judgment the interest of said city would be advanced thereby ; that this belief and opinion as to their power, was the result of an examination of the charter of said city, and the advice of counsel reputed to be learned in the law ; and that said ordinance was passed in compliance with the petition of a large number of prominent and wealthy citizens and tax-payers, representing that the erection of said hotel was a matter of the highest public interest and importance, and soliciting the common council to relieve the same from the taxes named in said ordinance; and that the error of said common council and the members thereof, if any was committed in the passage of said ordinance, was an error of judgment in reference to their powers under the law, committed while they were endeavoring in good faith to discharge their duty according to law and the best interests of said city, and the assessors supposed that the object in view could be effected by omitting the said property from the assessment roll and that the same might be subjected by the Board of Supervisors of said county of Milwaukee, to the payment of county, state and school taxes for the year 1857, in like manner as other real estate ; and that the error of the assessors, (if any) was committed, was an honest error of judgment as to their powers and duties under the law, and was committed while said assessors were endeavoring in good faith to perform their duties according to law, as they understood those duties, in the honest exercise of their best judgment in reference thereto, and with the purpose and

intent to fulfill their duties in all respects. The plaintiff demurred to the answer and had judgment in the circuit court thereon granting him the relief demanded in his complaint, and the defendants appealed.

*Joshua Stark*, for the appellants, submitted an elaborate argument, commenting at length upon the case of *Weeks vs. The City of Milwaukee*, 10 Wis., 250, and contended that upon the rule laid down by the court in that case and the cases there cited, that the plaintiff was not entitled to any relief, and that an error of the taxing officers committed while attempting in good faith to perform their duties, would not vitiate the tax. *Kelly vs. Corson*, 11 Wis., 1. The ordinance in question, purports only to exempt the Newhall House property "*from city and ward assessments*" and even if the city taxes should be declared void by reason of the ordinance, yet the taxes levied for state, county and school purposes being upon a separate list and collected upon a separate warrant, ought not to be held illegal, and if it was held to vitiate the state and county and school taxes levied in the city, it must be held for the same reason to vitiate the state, county and school tax throughout the county, and even the state taxes throughout the state. Counsel commented on the ruling in the *Weeks* case, that an intentional omission of property from the assessment roll would render void the whole tax and contended, that the doctrine of that case was false in principle, unsupported by authority, and opposed to numerous decisions and that it had been practically overruled by this court and that it could not be reconciled with principles and doctrines since established by it with great deliberation. (See cases cited in the opinion in that case.) *Watson vs. Princeton*, 4 Met., 499; *Williams vs. School Dist.*, 21 Pick,, 81; *Exchange Bank vs. Hines*, 3 Ohio St., 35; *Mills vs. Gleason*, 11 Wis., 497; *Warden vs. Supervisors, &c.*, 14 Wis., 618, and cases there cited.

The right to an injunction is not an absolute right but rests in the discretion of the court. 2 Story Eq., § 693, 696, 863,

959, and there are numerous cases in which courts of equity have refused to interfere to enjoin the collection of taxes when it appeared that the plaintiff had a remedy at law.    *Tompkins vs. Sands*, 8 Wend., 462, 468; *Livingston vs. Hollenbeck*, 4 Barb., 1, 17; *Mooers vs. Smedley*, 6 Johns. Ch., 28; *Leroy vs The Mayor*, 4 Johns. Ch., 352.    In support of the same principle is the case of *Stokes vs. Knarr*, 11 Wis., 389.    The plaintiff was not entitled to any relief, for the reason that he did not offer to do equity, he did not offer to pay what was equitably due from him for taxes on the property in question for 1857.    *Torry vs. Milbury*, 21 Pick., 70; *State vs. Randolph*, 1 Dutcher 427; *State vs. Platt*, 4 Zab., 108; *State vs. McClurg*, 3 Dutcher 253; *Walker vs. City of St. Louis*, 15 Mo., 576; *Stokes vs. Knarr*, 11 Wis., 389; *Ableman vs. Roth*, 12 Wis., 91; *Kneeland vs. Milwaukee*, 15 Wis., 169.    It was not enough therefore, to show that the taxes were irregular or void.    Sec. 24, chapt. 15, R. S., 1849, furnishes a practical, just and reasonable remedy for the evil and injustice of which the plaintiff complains.

*H. F. Prentiss*, for the respondent.    (No brief on file.)

*By the Court*, COLE, J.    The main question involved in this case, namely, as to what was the effect of omitting the Newhall House, upon the validity of the general taxes of 1857, has already been considered and passed upon in *Weeks vs. City of Milwaukee*, 10 Wis., 242.    It was there held, that the effect of exempting that property from taxation, under the ordinance of the common council of the city, was to render these taxes invalid.    The counsel for the appellants, however, in the able and elaborate argument which he addressed to the court, contended that there was a distinction between the cases, and that the ruling in *Weeks vs. City of Milwaukee*, did not necessarily dispose of this question as it is presented in this record.    He supposes that it does not fall within the reason and principle of that decision, because it is alleged in the answer that the assessors omitted this property from the assessment roll in the

honest belief that the common council, under the provisions of the city charter, had full power to exempt it from taxation. But this is a misapprehension of the doctrine of that decision. It was a conceded point in that case, that the omission of this property was intentional on the part of the city authorities. That is, they knew that this property was there, and that it was liable to taxation like other property, but, from motives of liberality and to encourage the building of so large and commodious a public house, they attempted to exempt it entirely from taxation. It is here averred that the common council passed the ordinance in good faith, honestly believing that they had the legal power and authority to pass the same and relieve the Newhall House property from city and ward taxes and assessments, if, in their judgment, the interest of the city would be advanced thereby; and for the sole purpose of giving effect to the ordinance, the assessors omitted the property from the assessment rolls. This does not essentially vary the question from the *Weeks* case. In both cases it appears that the property was designedly and purposely omitted from the assessment rolls, and this circumstance takes them out of the rule of that class of decisions, which hold that " omissions arising from mistakes of fact, erroneous computations or errors of judgment on the part of those to whom the execution of the taxing laws is entrusted, do not necessarily vitiate the whole tax." In other words, it is an intentional, in contradistinction to an accidental omission of the property which affects the validity of the tax. The rule must have this limitation, otherwise the citizen would have no relief, whether the taxing officers complied with the laws and constitution or not. Indeed, upon any other theory, one might say that the greater the ignorance of those officers of their duties, and the more flagrant the violation of law in assessing and levying the tax, the more legal and valid it becomes. For suppose the common council of the city, for the purpose of inviting capital to their city and encouraging its trade and commerce,

should pass an ordinance exempting from taxation all the merchandise, money and other property, in the honest belief that they had the legal power to do this, and the assessors, to give effect to such an ordinance, and supposing it was valid, should omit that class of property altogether from the assessment rolls, and only list the real estate, would any one contend that such an error of judgment on the part of the officers, both as to their duties and powers under the law, would not invalidate the tax? Probably not. And why? Because the exemption of the property was intentional, and the authorities undertook to suspend and nullify the laws in respect to it, which they obviously had no right to do. Yet, does it render their action legal because they honestly supposed they had this power to go contrary to law? It seems to us not.

It is possible that cases may be found in conflict with this doctrine, but if so, we are not disposed to follow them. We prefer to adhere to the principle laid down in *Weeks vs. City of Milwaukee*, as being more just, safe and reasonable. For if public officers may disregard the law, and deliberately and purposely omit from the assessment rolls property which they know is liable to taxation, because by so doing they imagine some "great public benefit" will be secured, and still the citizen whose tax has been increased thereby can have no relief, but must pay the same, there would seem to be little value in laws regulating the levying and collection of public revenues. It might as well be left to the discretion or caprice of the officers to impose the burdens of taxation as they might think proper.

But it is insisted that if an intentional omission of property invalidates a tax, that the same result ought to follow when property is omitted through accident, mistake or error of judgment; that the consequence to the citizen is the same in both cases, who has to pay more than his just proportion of the tax, and therefore if he is not relieved in one case, he should not be in the other. If he is equally oppressed, why, it is asked, should a court of equity afford a remedy in the former contin-

gency and deny it in the latter? Or what reason can there be in applying a different rule to the two cases?

In each case a court of equity unquestionably considers the tax-payer equally injured, whether the omission by which his tax was increased were intentional or accidental. By either means he is compelled to pay more than his just share of the expenses of the government. But in the one case the error arises from the fallibility of men and the imperfection of human institutions. Revenue is essential to the support of government. The execution of revenue laws is necessarily intrusted to men who, at best, will make mistakes in levying and collecting taxes. The assessor will frequently fail to get a list of all the taxable property within his jurisdiction, however vigilant and careful he may be. This is unavoidable. But if the tax is always to be avoided because through these mistakes and omissions, property subject to taxation has escaped its proper burdens, then no tax could ever be collected. Hence the cit- izen, as the price of government and of social order, must sometimes pay more than his just share of taxes. It may be a hardship that he should do this, but this is more than coun- ter-balanced by the advantages he receives from protection to his life, liberty and property. But there is no necessity for public officers to disregard the law, and intentionally omit to list property. They know where the property is, and know that it is subject to taxation. But they purposely omit it from the assessment rolls for some reason, assuming that they may have power to exempt it. Therefore a court of equity may with much propriety hold, that an error unavoidable in its character must be submitted to in the one case, though the effect of it may be to improperly increase the burdens of taxa- tion upon some; while it grants relief to one whose taxes have been increased by an intentional disregard of the laws on the part of those to whom their execution had been committed. The cases are clearly distinguishable from each other, and

the reason for exonerating a party from the payment of his tax in the one case, does not exist in the other.

The counsel likewise supposed that the rule laid down in *Weeks vs. City of Milwaukee*, was in conflict with the decisions in *Kelly vs. Corson*, 10 Wis., 1; *Mills vs. Gleason*, id., 470; *Warden vs. Supervisors of Lafayette Co.*, 14 id., 618; and *Milti-more vs. Supervisors of Rock Co.*, 15 id., 9.  We do not so understand those decisions.  In *Kelly vs. Corson* it did not appear that the party resisting the payment of the tax, was in any view injured by the unauthorized action of the board of equalization, even assuming that they erred in regard to their powers. He therefore had no ground of complaint.  In *Mills vs. Gleason* the objection was based upon a mere non-compliance with some directions of the statute, notwithstanding which the tax may have been entirely just and equal.  It was held that such an objection, even if well founded, did not vitiate the tax. In *Warden vs. Supervisors of Lafayette Co.*, and *Miltimore vs. Supervisors of Rock Co.*, the error complained of did not increase the taxes which the parties were bound to pay.  In each case the amount of tax which the party ought to pay was readily ascertained from the complaint itself, or the court was able to say from the complaint, that the error or inequality operated to the benefit instead of injury of the resisting taxpayer.  It is very obvious that those cases did not present a strong ground for equitable interposition.  But no such reason exists in this case for denying the respondent relief.  However, we think he is only entitled to relief upon condition of paying the taxes which are legal and which in justice he ought to pay.

He states in his complaint that there were certain special and ward taxes assesssd against his lots which, of course, could not be changed or affected by the omission of the New-hall property, as that was situated in another ward.  Why should he be exempt from paying those taxes?  He knows the amount, and has not attempted to impeach or question their justice or correctness, except that there was an omission

of property in another ward. But how could such omission affect the ward and special taxes? Clearly it could not. And therefore, before a court of equity will cancel the certificates and perpetually restrain the proceedings, it seems but just to require the respondent to pay the taxes which are valid and to which there does not appear to be any objection. *Warden vs. Supervisors La Fayette Co.*, and *Miltimore vs. Supervisors of Rock Co., supra.*

Upon the same ground it was contended that the respondent should be compelled to pay his just share of the general tax of 1857, which should have been assessed against his property. It is claimed that by the public records and other means it can be precisely ascertained how much those taxes were increased by the error complained of. It is very clear that no such question is in this case, for the reason that no testimony was offered on the trial; and it is impossible for us to say, upon the record, whether the matter was susceptible of computation or not. It would seem to involve the necessity of a re-assessment of the property of the city, and a re-adjustment of the taxes for that year in order to ascertain the amount which each tax-payer ought to pay. But whether this is so or not, we are not called upon to decide, because the question is not presented by anything in this record. Not so, however, in respect to the special and ward taxes. The respondent shows what they amount to, in the complaint itself. He therefore ought to pay the legal taxes, before he is entitled to relief against the illegal taxes.

The judgment of the circuit court must be modified, so as to conform to this decision; but without costs to either party, because the point upon which the judgment is modified, was not made in the court below.

Judgment accordingly.