GUITIAN ET AL. v. THE PEOPLE OF PORTO RICO.

APPEAL from the District Court of San Juan.

No. 70.—Decided April 10, 1907.

TAXES—ASSESSMENT OF PROPERTY—DECISIONS OF BOARD OF EQUALIZATION AND REVIEW—MANIFEST ERRORS IN ASSESSMENT ROLL.—The provisions of section 314 of the Political Code, amended by the Act of March 10, 1904, cannot be construed to mean that the district courts have jurisdiction to review the decisions of, or correct errors committed by the Board of Equalization and Review, since that section in providing that the schedules shall be conclusively presumed by all courts and tribunals to be valid and that they shall not be changed or set aside except by way of a correction of manifest error, has reference to cases where such schedules are introduced in evidence to prove a fact in a collateral proceeding; that the court must presume them to be valid, but if any manifest error appears therein it may be corrected.

ID.—The provisions of section 310 of the Political Code, in providing that the decisions of the Board of Equalization and Review, in all cases submitted to its consideration shall be final, prevents such decisions from being reviewed by the ordinary courts on appeal, *certiorari;* or by any other remedy, since jurisdiction has not been conferred upon the courts in these matters.

The facts are stated in the opinion.

*Mr. Cuevillas* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This section was brought by a large number of persons,

who describe themselves as the owners of certain urban estates in the city of San Juan, and as members of the "League of Proprietors of Urban Estates in San Juan," against the "Government of Porto Rico," and they complain that the Insular Treasurer has ordered a total revision of the assessments of the houses in San Juan, which were before sufficiently high, raising them from 50 to 100 per cent, and this without any lawful authority, and greatly to the damage of the proprietors. That the league, being duly incorporated, according to its regulations immediately proceeded to take measures to prevent this raising of assessments by obliging the Treasurer to comply with existing laws which appear to have been infringed. These efforts proved to be unavailing. The honorable Treasurer invited the committees of the league to present to the Board of Review and Equalization the price which, in their opinion ought to be placed on each square meter of the lands and upon the parts built upon; and that the league in response to said invitation, after a detailed study of the subject, presented to the said board a report and a schedule of prices which, according to its judgment, ought to be fixed upon the lots and buildings in San Juan. That the injured proprietors presented their complaints to the said Board of Review and Equalization, which decided them in such a manner as to compel them to bring this action against the Government of Porto Rico, in order to secure the general and individual decisions, which at the proper time may be rendered. That the Board of Review and Equalization adopted generally the prices proposed by the league for the improvements, by the square meter, but did not adopt the prices proposed for the square meter of the lots. That the Treasurer, in the new revised assessment, did not adopt the numbers of square meters of the lot, the price of each square meter and the total value of the lot, nor the number of square meters built upon, the price of each meter and the total value of the construction. That the assessment fixed by the Board of Review

and Equalization to the property of the plaintiffs does not approximate the actual or market value thereof, and there appear in them manifest errors, causing to said proprietors great damages. That the actual values of the properties, buildings and lots, are those set out in the schedules presented. That in San Juan it is a well known fact, verified by the sales of houses, that there has been no separation between the houses and the lots but that the prices have been fixed having regard to the total value of the property. That it is an incontestable fact that here in San Juan the actual price or market value of houses is always fixed between the buyers and sellers, by taking the gross amount of the rental and then deducting such a per cent for taxes, light in the entrances, hydrant water, cost of administration and preservation of the property, losses of rents by removals and bankruptcies, which amounts to at least 40 per cent in respect to those houses called *vecinal* and to 25 per cent in regard to other houses. This being done the remaining rent is capitalized at the rate of 9 per cent annually, which is a fair average, considering the current rate of interest: The sum resulting is the true actual or market value of the property. This capital, which is the only thing which can be made to support the weight of taxation, represents the value of the lot and of the buildings. Deducting the value of the lot the value of the buildings remains. That it is a real fact that the value of the lots in San Juan cannot be other than that fixed by the schedule proposed by the league. The plaintiffs have already paid into the Treasury their respective quotas but under protest to abide the result of this suit.

The complaint then proceeds to pray the court to make the following declarations, to wit:

1. That the Treasury had no legal right to order or to make a reassessment or to revise the assessment previously made of the urban property in the city of San Juan, and in so doing violated section 7 of the Act of the 10th of March, 1904.

2. That the present vaulations must remain ineffective in regard to the property of these plaintiffs, since none of them have requested a reformation of the same, although they are generally high and incorrect, and since there is no reasonable ground for any alteration; and that consequently the valuations of the previous year should continue in force.

3. And, in case the foregoing prayer be not granted, that a reappraisement of the property of the plaintiffs be ordered, according to schedules to be furnished by the owners themselves.

4. That the Government of Porto Rico shall return to the plaintiffs the amount of money which has been paid by them in excess of the amount of taxes really due from them.

5. That the Government shall refund to the plaintiffs all the amounts of their disbursements in this matter.

To this complaint the defendant filed a demurrer in due course of procedure.

The first point presented by the demurrer was that the district court had no jurisdiction over the subject matter of the action, in so far as concerns the revision of the assessments made for taxation, and that said court had no legal authority to declare that the Treasurer had no right to order or to carry into effect the general revision of the assessments of the urban property of this city, nor has the said court the authority to declare the present valuations to be ineffective and to reduce the valuations fixed upon the same; for the reason that it appears on the face of the complaint that all these matters are *res judicata* by virtue of the final, complete and definite decision of the Board of Review and Equalization.

Other points were raised by the demurrer but, since the question of jurisdiction is fundamental and naturally and logically the first to be determined in every litigation, the court below based its decision on this point alone; although the demurrer was sustained on all the grounds presented.

Having found itself without jurisdiction the trial court dismissed the case at the cost of the plaintiffs. From the judgment rendered against them the plaintiffs presented an appeal to this court on various grounds.

But we will, like the trial court, first examine the question of jurisdiction; since if the court below correctly dcided that proposition it is useless to proceed further in the case.

The trial judge in rendering his opinion in this case on the question of jurisdiction very properly referred to sections 308, 310 and 314 of the Political Code of Porto Rico, as amended by the Act of the Legislature entitled "An Act to amend Title IX of the Political Code, and for Other Purposes" approved on the 10th of March, 1904. For a proper understanding of this matter it is well to quote these several sections as amended. They will be found to read as follows:

"Section 308. For the purposes of revising the assesment or reassessment of real and personal property as provided by this title, and for the purpose of passing upon all claims made by taxpayers in respect to the assessment of their properties, there shall be a permament Board of Review and Equalization, composed of the Treasurer of Porto Rico, the Secretary and the Commissioner of the Interior, and two other persons, citizens of Porto Rico, versed in matters pertaining to the value of property in Porto Rico. Said two persons shall be appointed by the Governor, by and with the consent of the Executive Council, on or before the 1st day of May of each year, shall hold office for one year, or until their successors are appointed and qualify, and shall receive such compensation as may be fixed by the Governor, but not to exceed ten dollars for each day's attendance at the meetings of the board, and actual cost of transportation necessarily incurred. Each of the members of said board shall take an oath fairly and impartially to pass upon questions coming before them according to law. Any four of them shall constitute a quorum. The Treasurer shall be ex-officio chairman of said board." (Revised Statutes of Porto Rico, page 409; session acts of 1904, page 175.)

"Section 310. The said Board of Review and Equalization shall hear the appeal and determine anew any questions arising before the board which relate to the liability of the property to assessment, or to the amount thereof, and, upon recording such determination, shall

correct the assessment books or schedules in accordance with their de-
cision, or shall order such correction to be made by the Treasurer, if
said books or schedules be in his possession.  Said board shall have
power to abate, lessen or increase the valuations made in any schedule
returned to it, whether any complaint has been made in relation
thereto or not, and to decide all other complaints in respect to the
assessment of taxes and to correct all errors as they may be brought
to its attention: *Provided, however,* That no increase shall be made
in the valuation of property of any person unless such person shall
have been given at least five days' notice of the intention to make
such increase, in the manner provided for in section 302 of this title.
The decision of the board in all matters coming before it shall be final.
In executing the duties imposed upon it by this title the said board
may examine, on oath or affirmation, any person or persons who may
have knowledge of or information concerning the value of property
subject to taxation, and any member of said board may administer
the oath or affirmation.''     (Revised Statutes of Porto Rico, pp.
410-411.)

"Section 314. When the schedule containing the assessments have
been duly examined, verified, corrected and revised, as hereinbefore
provided, the Treasurer shall cause the schedules to be secured, bound
in book form, with appropriate titles and indices if necessary.   No
book shall contain the schedules of more than one assessment district,
and when indorsed and signed by the Treasurer, as chairman of said
board, said bound schedules shall constitute the assessment book of
the district to which it relates, in accordance with which the tax pro-
vided by law shall be levied and collected; and shall be conclusively
presumed by all courts and tribunals to be valid and shall not be
changed or set aside except by way of the correction of manifest error:
*Provided,* That the Treasurer, as president of the Board of Revision
and Equalization, shall indorse and sign upon each essessment book as
corrected, in accordance with the decisions of said board, a statement
to the effect that the same is the assessment book for the district to
which it relates, and said assessment book shall, when so indorsed,
constitute the assessment of property for purposes of taxation for the
fiscal year beginning on the first day of July.''    (Revised Statutes of
Porto Rico, 412; session acts of 1904, p. 175.)

In New York the statute relating to assessment is some-
what similar to that which we have in Porto Rico.   Hence,
the trial judge, in deciding this case, naturally turned to that

State for authorities.  He refers to the opinion in two cases arising under the laws of New York, one decided by the New York Court of Appeals, and the other by the Supreme Court of the United States.  We will make an extract from each of these opinions.

In the former case the New York court of appeals says:

"The power of the courts to interfere with assessments for local improvements in the city of New York has always been quite limited. The reason for this is very obvious, since the various charters contain a provision constituting a local tribunal for that purpose, composed of the comptroller, corporation counsel and president of the board of public improvements.  This board was clothed with ample judicial powers to revise, correct or confirm all such assessments, and in cases where it was deemed necessary to remit the assessment roll to the assessors with directions to make a new assessment.  But when this board had completed its duty the courts were limited in their power to review the assessment to a few specific questions.  The property owners have a right to be heard before the board and before the assessors, but after that hearing and the confirmation of the assessment they have no right to attack it in the courts except as specifically prescribed in the statute."  (Matter of Munn, 165 N. Y., 153.)

In the opinion rendered by Mr. Justice Field in the Supreme Court of the United States, the following language occurs:

"In nearly all the States, probably in all of them, provision is made by law of the correction of errors and irregularities of assessors in the assessment of property for the purposes of taxation.  This is generally through boards of revision or equalization, as they are often termed, with sometimes a right of appeal from their decision to the courts of law.  They are established to carry into effect the general rule of equality and uniformity of taxation required by constitutional or statutory provisions.  Absolute equality and uniformity are seldom, if ever attainable.  The diversity of human judgments, and the uncertainty attending all human evidence, preclude the possibility of this statement.  Intelligent men differ as to the value of even the most common objects before them—of animals, houses and lands in constant use.  The most that can be expected from wise legislation is an

approximation to this desirable end, and the requirement of equality and uniformity found in the constitutions of some States is complied with, when designed and manifest departures from the rule are avoided.

To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular taxation, where the assessing officers had jurisdiction to assess the property. Their action is judicial in its character. They pass judgment on the value of the property upon personal examination and evidence respecting it. Their action being judicial, their judgments in cases within their jurisdiction are not open to collateral attack. If not corrected by some of the modes pointed out by statute, they are conclusive, whatever errors may have been committed in the assessment. As said in one of the cases cited, the money collected on such assessment cannot be recovered back in an action at law, any more than money collected on an erroneous judgment of a court of competent jurisdiction before it is reversed." (*Stanley* v. *Supervisors of Albany,* 121 U. S., 550.)

In a suit brought against state officers to enjoin them from certifying a tax which they claim to be laid by authority of the statute, but which complainant avers to be without legal authority, arising in the Circuit Court of Appeals of the sixth circuit, Judge Taft in delivering the opinion of the court says:

"We find nothing in these cases which should change our view, already expressed, of the effect of the Cummings case. They merely emphasize the point that equity will not relieve against an assessment merely because it happens to be at a higher rate than that of other property; that such inequalities, due to mistake, to the fallibility of human judgment, or to other accidental causes, must be borne, for the reason that absolute uniformity cannot be obtained; that, in other words what may be called 'sporadic cases of discrimination' cannot be remedied by the chancellor. He can only interfere when it is made clear that there is, with respect to certain species of property, systematic, intentional and unlawful undervaluations for taxation by the taxing officers, which necessarily effect an unjust discrimination against the species of property of which the complainant is an owner. The reason for the distinction is obvious. The occasional and accidental discriminations are inevitable in every assess-

ment, and are not likely to continue, because not the result of an illegal purpose on the part of any one. If equitable interference in such cases could be invoked, the obstruction to the collection of taxes would be so frequent as to be intolerable. More than this, an action to enjoin a tax is a collateral attack upon the judgment of a quasi-judicial tribunal; and it cannot be justified except on the ground of an obvious violation of law, or something equivalent to fraud. It does not lie where the injury complained of arises only from the erroneous, but honest judgment of the lawfully constituted tax tribunal. The interferences by the chancellor in the case at bar and in the Cummings case rests on something equivalent to fraud in the tribunal imposing the tax. The various boards whose united action is by law intended to effect a uniform assessment on all classes of property are to be regarded as one tribunal and the whole assessment on all classes of property is to be regarded as one judgment. If any board which is an essential part of the taxing system intentionally, and therefore fraudulently, violates the law, by uniformly undervaluing certain classes of property, the assessment by other boards of other classes of property at the full value, though a literal compliance with the law makes the whole assessment considered as one judgment, a fraud upon the fully assessed property. And this is true, although the particular board assessing the complainants property may have been wholly free from fault or fraud, or intentional discrimination. Therefore the injunction might issue against the assessment upon the fully assessed property, as void altogether, until a new and uniform assessment upon all property according to law could be made. And such is the rule in some courts. (*Weeks* v. *Milwaukee,* 10 Wis., 263; *Hersey* v. *Board,* 16 Wis., 192; *Smith* v. *Smith,* 19 Wis., 619.) The inequity of allowing the taxpayer to escape altogether, and the intolerable inconvenience to the public in the delay incident to such a course, however, lead a court of equity to shape its order so as to allow only so much of the fraudulent judgment to be enforced against the complainant as may be done without imposing on him any inequality, that the circuit court was right in enjoning the unjust, unequal, and (in the sense already explained), fraudulent assessment against the complainant; but we thing the order should have required, as a condition of the issuing of the injunction, that the complainant should pay to the proper officers a tax upon the 75 per cent of the assessment made by defendants. The evidence taken with the averments of the bill, does not establish that the discrimination against the complainant's property really exceeds this. The condition imposed by the

circuit court was the payment of the taxes on the assessment for 1897 by the State board of assessors and equalizers. That assessment, as we have found, was annulled by the act of 1897. The order of the court is that the order of injunction be modified as above stated, and that, as thus modified, it be affirmed, at the costs of the appellants. (*Taylor* v. *Louisville & Nashville Railroad*, 88 Fed. Rep., 373-374.)

The court below seems to be under the impression that the expression used in the statute (that is to say in section 314 as amended), "except by way of the correction of manifest error" would give the district court jurisdiction to review and correct errors made by the Board of Review and Equalization, but in this, according to a proper construction of the statute, we think the court is in error. When the statute says that the schedules shall constitute the assessment book, etc., and shall be conclusively presumed by all courts and tribunals to be valid and shall not be changed or set aside except by way of correction of manifest error, it refers to such schedules when introduced in evidence to prove some fact in a collateral proceeding—for instance in a case of ejectment or otherwise. Then they are received by the court as valid, unless a manifest error appears on the face of the same, in which case the said error can be corrected.

But section 310 clearly says that the decision of the board in all matters coming before it shall be final. We think this cuts off any appeal or review, by way of *certiorari* or otherwise in the ordinary tribunals, of the decisions rendered by the Board of Review and Equalization. Such matters pertain to the executive branch of the Government and it has constituted a board which has, as is stated in the New York decisions, judicial powers, as far as the limited circle of its jurisdiction extends, and it was not intended to make the ordinary courts of the Island, which are constitute for the trial of controversies between parties, the arbiter or the supervisor of the assessment rolls made up in the Treasurer's office, and corrected by the board appointed for that purpose. The court below properly says that no courts are mentioned

to which an appeal can be taken, nor is any court mentioned which should undertake the correction of errors; and this is true for the manifest reason that it was not intended by these sections of the revenue law to confer jurisdiction upon the district courts, or any other courts, in regard to the matters treated of in such statutes. If it were possibly so intended, this would be a most unusual method of conferring jurisdiction upon courts.

When the Treasurer of the Island has acted in his official capacity in making assessments, or in changing the assessment already made, where it is necessary, and the matter is carried before the Board of Review and Equalization, and that board has heard the parties who claim to be aggrieved, and have decided the matter, the decision is final, and no court has authority, ordinarily, to interfere with the same. Of course there might be extraordinary circumstances arising in which the courts could interfere by injunction, or other extraordinary writ to prevent fraud or oppression, but the present case does not claim to be one of these.

Taking the view that we do of this question of jurisdiction it is not necessary to enter into the other questions presented in the demurrer of the defendant, and the first exception setting up the want of jurisdiction being correctly made and properly allowed by the court below, the judgment of that court should be affirmed without reference to the other points presented in the case.

In accordance with these views, the judgment of the court below should be affirmed and the costs taxed against the appellants.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.