GUITIAN ET AL. *v.* EL GOBIERNO DE PUERTO RICO.

APELACIÓN procedente de la Corte de Distrito de San Juan.

No. 70.—Resuelto en abril 10, 1907.

CONTRIBUCIONES—TASACIÓN DE LA PROPRIEDAD—DECISIONES DE LA JUNTA DE REVISIÓN É IGUALAMIENTO—ERRORES MANIFIESTOS EN LAS PLANILLAS.—La disposición contenida en el artículo 314 del Código Político, enmendado por la Ley de marzo 10, 1904, no puede interpretarse en el sentido de dar jurisdicción á las cortes de distrito para revisar ó corregir errores cometidos por la Junta de Revisión é Igualamiento, pues al disponer dicho artículo que las planillas se estimarán definitivamente válidas por las cortes y tribunales y no se alterarán ó anularán, sino con el fin de corregir errores manifiestos, se refiere á los casos en que dichas planillas se presentaren en juicio para probar algún hecho en un procedimiento colateral; entonces debe la corte estimarlas válidas, pero si se notare algún error manifiesto, puede corregirse.

ID.—Las disposiciones del artículo 310 del Código Político, al establecer que las decisiones de la Junta de Revisión é Igualamiento, en todos los asuntos que sean sometidos á su consideración, serán definitivas, impiden que tales decisiones puedan ser revisadas ante los tribunales ordinarios por medio de apelación, *certiorari* ú otros recursos, ya que á dichos tribunales no se les ha conferido jurisdicción alguna sobre esta materia.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Cuevillas.*

Abogado del apelado: *Sr. Rossy, Fiscal.*

EL JUEZ ASOCIADO SR. MACLEARY emitió la opinión del tribunal.

Esta demanda fué entablada contra el Gobierno de Puerto Rico por un gran número de personas que manifiestan ser los propietarios de ciertas fincas urbanas radicadas en la ciudad de San Juan, y miembros de la "Liga de Propietarios de

fincas urbanas de San Juan''; y dichas personas se quejan de
que la Tesorería Insular ha ordenado la revisión total de las
tasaciones de las casas de San Juan, que antes eran bastante
elevadas, aumentándolas desde un cincuenta hasta un ciento
por ciento, sin tener facultad legal para ello, y causándose á
los propietarios perjuicios considerables con tal proceder.
Que la "Liga," asociación incorporada en debida forma, de
acuerdo con las disposiciones de su Reglamento, procedió in-
mediatamente á tomar medidas para evitar dicho aumento de
las tasaciones, obligando á la Tesorería al cumplimiento de
leyes vigentes, que aparecían infringidas.   Estos esfuerzos
resultaron inútiles.   El Honorable Tesorero invitó á la Comi-
sión de la "Liga" á que presentase á la Junta de Revisión
é Igualamiento, el precio que, á su juicio, debía asignarse al
metro cuadrado de solares, y á la parte edificada; y la "Liga
de Propietarios," correspondiendo á dicha invitación, y, des-
pués de un detenido estudio del asunto, presentó á esa junta
un informe razonado y cuadro de los precios que, á su juicio,
debían asignarse á los solares y á las construcciones de San
Juan.   Que los propietarios lesionados presentaron sus que-
jas á la expresada Junta de Revisión é Igualamiento, y que
ésta las resolvió de tal manera que les obliga á interponer
esta demanda contra el Gobierno de Puerto Rico, para conse-
guir las resoluciones general é individuales que, en su opor-
tunidad, se determinarán.   Que la Junta de Revisión é Iguala-
miento adoptó, en lo general, los precios propuestos por la
"Liga" para el metro cuadrado de edificación, pero no adoptó
los precios propuestos para el metro cuadrado de solares.   Que
la Tesorería no consignó, en las nuevas tasaciones revisadas,
el número de metros cuadrados de solar, precio de cada metro
cuadrado y el total valor del solar, ni el número de metros
cuadrados edificados, precio de cada metro cuadrado y el valor
total de la construcción. Que las tasaciones fijadas por la Junta
de Revisión é Igualamiento á los reclamantes, no se ciñen á
los valores actuales, ó sea los del mercado, y se incurre en
ellas en errores manifiestos, causándose á dichos propietarios

perjuicios de alta consideración. Que los verdaderos valores de las propiedades, construcciones y solares son los que se determinan en el cuadro presentado por la liga. Que es un hecho constante que aquí en San Juan, al verificarse los contratos de compra-venta de casas, no se ha hecho separación entre solares y construcciones, sino que los precios se han fijado, considerando todo el valor de la finca. Que es un hecho incontestable también, que aquí en San Juan, el precio actual ó valor del mercado de las casas, se ha fijado siempre por vendedores y compradores, determinando su renta bruta, y descontando después un tanto por ciento para contribuciones, luz en los zaguanes, agua del acueducto, gastos de administración y conservación de la finca, pérdidas de rentas por mudanzas y fallidos, cuyo tanto asciende á lo menos á un cuarenta por ciento, cuando se trata de casas llamadas de vecindad, y un véinte y cinco por ciento, cuando se trata de otra clase de fincas. Que hecho eso, se capitaliza la renta líquida que resulte al nueve por ciento anual, que es un término medio entre los intereses corrientes, y que la cantidad resultante es el verdadero precio total de la finca, valor actual ó precio del mercado. Que ese capital, que es el único que puede hacerse soportar el peso de las contribuciones, representa el precio del solar y el precio de la construcción. Que deducido el valor del solar, lo demás representa el de la construcción. Que es un hecho verdadero que los valores de los solares de San Juan, no pueden ser otros que los que se fijan en el cuadro presentado por la "Liga." Que los propietarios reclamantes han pagado ya á la Tesorería sus respectivas cuotas, pero bajo la protesta de estar y pasar solamente por el resultado de esta demanda.

Procede entonces la demanda á suplicar al tribunal que haga las siguientes declaraciones, á saber:

Primero: Que la Tesorería no tuvo facultad legal para ordenar y realizar una retasación, ni para revisar la tasación anterior de la propiedad urbana en la ciudad de San Juan; y que al hacerlo así, ha infringido lo dispuesto por la sección 7ª. de la Ley de 10 de marzo de 1904.

Segundo. Que las actuales tasaciones deben quedar sin efecto en cuanto á los reclamantes, porque aún siendo incórrectas y elevadas, en lo general, las del año económico de 1904 á 1905, ningún propietario pidió su reforma, ni ha habido motivo razonable para alterarlas; y que, por consiguiente, deben declararse vigentes las tasaciones del año último.

Tercero. Que si no acepta ese extremo, se reduzcan los precios de las tasaciones de los reclamantes, á lo que se consigna en la casilla Número IV del cuadro suministrado por los mismos propietarios.

Cuarto. Que el Gobierno de Puerto Rico debe devolver á los propietarios reclamantes el exceso que resulte satisfecho por ellos, teniendo en cuenta lo que hayan debido pagar.

Quinto. Que el Gobierno de Puerto Rico debe indemnizar á los reclamantes de todos los desembolsos hechos por los mismos, con motivo de este asunto.

A esta demanda opuso el demandado oportunamente una excepción previa.

El *primer* punto alegado en la excepción previa, era que la corte de distrito no tenía jurisdicción por razón de la materia de la acción, en cuanto se relacione con la revisión de la tasación de la propiedad, ni tenía dicho tribunal facultad para declarar que la Tesorería no tuvo razón para ordenar la realización de una retasación ó revisión general de la tasación de la propiedad urbana de esta Capital, y tampoco para declarar sin efecto las tasaciones actuales, y á reducir los precios de las tasaciones por la razón que de la misma demanda se desprende, que todo esto ha sido cosa adjudicada por razón de la tasación final, completa y terminante de la Junta de Revisión é Igualamiento.

Además de éste, se plantearon otros puntos en la citada excepción previa; pero como la cuestión de jurisdicción es una cuestión fundamental, y como tal es naturalmente y lógicamente la primera que ha de determinarse en todo litigio, el tribunal inferior basó su fallo solamente en este punto, aunque sostuvo la excepción previa por todos los fundamentos alega-

dos, y, encontrándose sin jurisdicción, el tribunal sentenciador declaró sin lugar la demanda, con las costas á los demandantes. Contra la sentencia dictada contra ellos, los demandantes interpusieron recurso de apelación para ante este tribunal, fundándolo en varios motivos.

Pero nosotros, procediendo en la misma forma que lo hizo el tribunal sentenciador, examinaremos primero la cuestión de jurisdicción, puesto que si el tribunal inferior resolvió correctamente esa proposición, es inútil proseguir la discusión de este caso.

El juez sentenciador, al emitir su opinión en el presente caso, con respecto á la cuestión de jurisdicción, muy propiamente hizo referencia á los artículos 308, 310 y 314 del Código Político de Puerto Rico, tal como ha sido enmendado por la Ley de la Asamblea Legislativa, intitulada "Ley para enmendar el Título IX del Código Político, y para otros fines" que fué aprobada en 10 de marzo de 1904. Para comprender bien este asunto, conviene reproducir los diferentes artículos citados, tales como han sido enmendados. Dichos artículos dicen lo siguiente:

"Artículo 308.—Con el propósito de revisar la tasación y retasación de la propiedad inmueble y mueble, según por este título se dispone, y con el fin de resolver todas las reclamaciones que presenten los contribuyentes con referencia á la tasación de sus propiedades, habrá una Junta permanente de revisión é igualamiento, que se compondrá: del Tesorero de Puerto Rico, el Secretario, el Comisionado del Interior, y otras dos personas, ciudadanos de Puerto Rico, versadas en asuntos relativos al valor de la propiedad en Puerto Rico. Dichas otras dos personas serán nombradas por el Gobernador, con y mediante el consentimiento del Consejo Ejecutivo, á más tardar en primero de mayo de cada año; ejercerán sus cargos por un año, ó mientras se nombren y habiliten sus sucesores, y recibirán la remuneración que les señale el Gobernador, pero que no excederá de diez dollars por cada día de asistencia á las sesiones de la junta, más el costo preciso de viajes que por necesidad haya habido que hacer. Cada uno de los miembros de la referida junta deberá prestar juramento de que sus decisiones, acerca de los asuntos que ante ellos se presenten,

serán justas é imparciales, de acuerdo con la ley.   Cualesquiera cuatro de ellos constituirán *quorum.*—El Tesorero será Presidente nato de dicha Junta.''

*Estatutos Revisados de Puerto Rico,* pp. 440-441.
Leyes de la sesión de 1904, p. 160.

''Artículo 310.—La citada Junta de Revisión é Igualamiento oirá la apelación y resolverá de nuevo cualquiera cuestión que se presentare ante la junta, y que se relacione con la mayor ó menor cantidad en que puede tasarse la finca para imponerle las contribuciones, ó con el importe de ésta; y al hacer constar dicha resolución, corregirá los libros de tasaciones ó las planillas, de acuerdo con lo que se haya decidido, ó dispondrá que se haga la corrección de referencia por el Tesorero, si los citados libros ó planillas se hallaren en poder de éste. La referida junta tendrá poder para suprimir, disminuir ó aumentar las valuaciones hechas en cualquier planilla que le haya sido enviada, háyase presentado ó no queja alguna con relación á la misma; y para decidir toda otra queja con respecto á la imposición de contribuciones, y para corregir todos los errores que haya, á medida que se le indiquen; disponiéndose, no obstante, que no se hará aumento en la valuación de la propiedad de ninguna persona, á no ser que á ésta se le haya dado aviso, con cinco días por lo menos de antelación, y en la forma dispuesta en el artículo 302 de este título, de que se intenta practicar semejante aumento. *La decisión de la junta en todo asunto que le sea presentado, será firme.* Al cumplir con los deberes que este título impone, la citada junta puede examinar, bajo juramento ó afirmación, á cualquier persona ó personas, que puede ó puedan tener conocimiento ó informes respecto del valor de la propiedad sujeta á tasación; y cualquier miembro de dicha Junta puede tomar el juramento ó afirmación.''

*Estatutos Revisados de Puerto Rico,* pp. 442-443.

''Artículo 314.—Cuando las planillas que contienen las tasaciones, hayan sido debidamente examinadas, comprobadas, corregidas y revisadas, según en este título antes se ha dispuesto, el Tesorero hará que las referidas planillas sean firmemente encuadernadas en forma de libro, con títulos é índices apropiados, si fuesen necesarios.   Ningún libro contendrá planillas de más de un distrito de tasación, y después que haya sido endosado y firmado por el Tesorero, como presidente de dicha junta, dichas planillas encuadernadas constituirán el libro de tasaciones del distrito á que éste se refiera, y de acuerdo con este libro, se impondrá y recaudará la contribución que señala la

ley; y se presumirán definitivamente válidos por todas las cortes y tribunales, no alterándose ni desestimándose *excepto por vía de correc- ción de errores manifiestos;* disponiéndose que el Tesorero, como presi- dente de la junta de Revisión é Igualamiento, consignará y firmará en cada libro de tasación, corregido de acuerdo con las decisiones de dicha junta, una declaración, haciendo constar que el citado libro es el de ta- sación para el distrito á que se refiere, con lo cual constituirá éste la tasación de la propiedad para los efectos de la tributación correspon- diente al año económico que empieza en primero de julio.''

*Estatutos Revisados de Puerto Rico,* p. 444.
Leyes de la sesión de 1904; p. 161.

En Nueva York, la ley de tasaciones es un tanto análoga á la que tenemos en Puerto Rico. Por esta razón, el juez senten- ciador, al fallar este asunto, se dirigió, naturalmente, á dicho estado, en busca de autoridades. Dicho juez hace referencia á los dictámenes emitidos en dos causas surgidas bajo las leyes de Nueva York, una de las cuales fué fallada por el Tri- bunal de Apelaciones de Nueva York, y la otra, por el Tri- bunal Supremo de los Estados Unidos. Reproduciremos un pasaje de cada uno de dichos dictámenes.

En el primero de dichos casos, el Tribunal de Apelaciones de Nueva York dice lo siguiente:

''La facultad de los tribunales para intervenir en las tasaciones he- chas con el fin de hacer mejoras locales en la ciudad de Nueva York, ha sido siempre muy limitada. La razón para esto es muy obvia, pues- to que las diferentes cartas constitucionales (de dicha ciudad) contie- nen una disposición por la cual se constituye un tribunal local para ese objeto, compuesto del contador, el abogado del ayuntamiento, y el presidente de la junta de mejoras públicas. Esa junta se hallaba re- vestida de ámplias facultades judiciales para revisar, corregir ó con- firmar todas las tasaciones de esta clase, y para, en los casos en que lo juzgaba necesario, remitir el libro de tasaciones á los tasadores con instrucciones de hacer una nueva tasación. Pero cuando dicha junta había terminado sus funciones, la facultad de los tribunales para re- visar la tasación, estaba limitada á pocas y determinadas cuestiones. Los dueños de bienes (ó propiedades) tienen el derecho de ser oídos ante la junta y ante los tasadores; pero después de haberse celebrado dicha audiencia, y haberse confirmado la tasación, no tienen ningún

derecho de atacarla en los tribunales, excepto en la forma especifica-
damente prescrita por la Ley.''

*Asunto de Munn,* 165 N. Y., 153.

En el dictamen emitido por el juez, Señor Field, en el Tri-
bunal Supremo de los Estados Unidos, dicho juez se expresa
en los siguientes términos:

''En casi todos los Estados, y probablemente en todos ellos, se han
establecido disposiciones legales para la corrección de los errores
é irregularidades en que hayan incurrido los tasadores en la tasa-
ción de la propiedad para los fines de la contribución. Tal corrección
se efectúa generalmente por las Juntas de Revisión é Igualamiento, co-
mo se las suele llamar por lo general; existiendo á veces el derecho (á
favor de los propietarios) de apelar contra sus decisiones para ante
los tribunales de justicia . Dichas juntas se han establecido para lle-
var á cabo la regla general de igualdad y uniformidad en la imposición
de contribuciones, con arreglo á las disposiciones constitucionales ó
estatutorias. Una igualdad y uniformidad absolutas existen raras ve-
ces, si es que se las puede lograr jamás. La diversidad de las opinio-
nes humanas y la incertidumbre que acompaña á todo testimonio hu-
mano, hacen imposible el logro de tal igualdad y uniformidad. Hom-
bres inteligentes tienen opiniones distintas con respecto al valor aún de
los objetos más comunes que tienen á la vista, tales como animales, ca-
sas y terrenos, que son de uso diario., Lo más que puede esperarse de
una legislación sabia, es una aproximación á ese deseable fin; y se ha
llenado el requisito de igualdad y uniformidad que se encuentra en las
Constituciones de algunos Estados (al tratarse de la imposición de
contribuciones), cuando se ha evitado todo quebrantamiento intencio-
nal y manifiesto de dicha regla.

''Á estas Juntas de Revisión, cualquiera que sea el nombre que se
les dé, debe dirigirse el ciudadano en busca de auxilio ó protección
contra una imposición excesiva é irregular de contribuciones, en los ca-
sos en que los funcionarios encargados de la tasación, tuvieron juris-
dicción, para tasar la propiedad. Sus resoluciones son de carácter ju-
dicial. Ellos dictan resoluciones con respecto al valor de la propiedad
después de un examen personal, y después de haber practicado la
prueba con respecto á la misma. Siendo judiciales sus procedimien-
tos, no pueden ser atacadas sus resoluciones mediante un procedimien-
to indirecto, en los casos en que dichas resoluciones hayan sido dicta-
das con respecto á asuntos que se hallan comprendidos dentro de su

competencia. Si no se las corrige por alguno de los medios indicados por la ley, entonces son concluyentes, cualesquiera que sean los errores en que se haya incurrido en la imposición de contribuciones. Como se ha dicho en uno de los casos citados, el dinero recaudado en virtud de tal imposición de contribuciones, no puede recobrarse mediante demanda, como tampoco se podría recobrar el dinero cobrado, en virtud de una sentencia errónea, dictada por un tribunal competente, antes de la revocación de dicha sentencia.''

*Stanley* v. *Supervisors of Albany,* 121 U. S. 550.

En una demanda entablada contra funcionarios del Estado, para impedir que certificasen con respecto á una contribución que ellos alegan haber sido impuesta por autoridad de la ley, pero que el demandante afirma no estar autorizada legalmente, y cuya demanda fué entablada ante la Corte de Apelaciones del sexto Circuito, el Juez Taft, al emitir el dictamen del tribunal, dice lo siguiente:

''No encontramos nada en estas causas que deba cambiar nuestra opinión ya expresada con respecto al efecto del caso de Cummings. Ellas simplemente acentúan el punto de que la equidad no concederá remedio alguno contra una imposición de contribuciones, meramente por el hecho casual de que dicha imposición de contribuciones se ha efectuado á un tipo de precios ó valores más elevado que el que sirvió de base para las contribuciones impuestas á otras propiedades; que tales desigualdades, que son debidas á errores, á la falibilidad de los juicios humanos, ó á otras causas accidentales, deben soportarse por la razón de que es imposible lograr una uniformidad absoluta; ó, en otras palabras, que lo que pudiera llamarse casos aislados de distinción (ó sean casos de imposición de contribuciones, en los cuales no ha habido la igualdad y uniformidad de proceder por parte de los tasadores, que exige la ley), no puede ser remediado por el Presidente del Tribunal de Equidad. El puede solamente intervenir cuando se haya demostrado claramente que, con respecto á cierta especie de propiedad, existen avaluaciones demasiado bajas para la imposición de contribuciones, y que dichas avaluaciones se han hecho por los funcionarios encargados de la tasación, de una manera sistemática, intencional é ilegal, lo cual constituye necesariamente una distinción injusta en contra de la especie de propiedad de la cual el demandante es el dueño. La razón para la distinción (que se hace entre el primer y el segundo ca-

so), es evidente. Las distinciones ocasionales y accidentales son inevitables, en toda imposición de contribuciones, y es probable que continúen por no ser el resultado de un propósito ilegal por parte de nadie. Si en tales casos, se pudiera invocar la intervención de los Tribunales de Equidad, los obstáculos para la recaudación de las contribuciones, serían tan frecuentes que serían insoportables. Es más, una demanda entablada con el fin de obtener del tribunal un interdicto prohibitorio ó "injunction", prohibiendo la recaudación de una contribución, es un ataque indirecto contra la decisión de un tribunal de carácter casi judicial y no puede justificarse, sino en el caso de que dicha demanda haya sido entablada con motivo de una evidente infracción de ley, ó á causa de un proceder (por parte de los tasadores), que constituya un fraude. No ha lugar á tal demanda en los casos en que los perjuicios de los cuales se queja el demandante, provienen solamente de la decisión errónea pero honrada de un Tribunal de Contribuciones legalmente constituído. La intervención por parte del Presidente del Tribunal de Equidad, en el presente caso, así como en el de Cummings, está basada en algo que equivale á un fraude por parte del tribunal que impuso la contribución. Las diferentes juntas, cuyas decisiones están, en su conjunto, destinadas por la Ley, á efectuar una imposición uniforme de contribuciones sobre toda clase de propiedades, deben considerarse como un solo tribunal; y todo el reparto de contribuciones sobre toda clase de propiedades, debe considerarse como un solo acto. Si cualquiera Junta que forma una parte esencial del sistema de reparto de contribuciones, intencionalmente, y, por lo tanto, fraudulentamente, infringe la Ley, tasando uniformemente en menos de su valor, á ciertas clases de propiedad, la imposición de contribuciones hecha por otras juntas sobre otras clases de propiedad, con arreglo al valor verdadero y completo de dichas propiedades—á pesar de ser una ejecución literal de la ley—convierte todo el reparto de contribuciones, considerado como un solo acto, en un fraude en contra de la propiedad debidamente tasada. Y esto es cierto, aunque la junta que haya impuesto las contribuciones sobre la propiedad del demandante, haya sido del todo libre de falta ó fraude ó distinción intencional. Por lo tanto, se podría expedir el interdicto prohibitorio ó *injunction* contra la imposición de contribuciones hecha sobre la propiedad debidamente tasada, como completamente nula y sin ningun valor, hasta que se pudiera hacer una imposición nueva y uniforme de contribuciones sobre toda la propiedad, de acuerdo con la ley. Y esa es la regla en algunos tribunales. (*Weecks* v. *Milwaukee,* 10 Wis. 263; *Hersey* v. *Board,* 16 Wis. 192; *Smith* v.

*Smith,* 19 Wis. 619). Pero la injusticia de permitir que el contribu-
yente escape enteramente, y, la inconveniencia intolerable que resulta
para el público de la demora causada por tal proceder, inducen al Tri-
bunal de Equidad, á formular su orden de tal manera que solo permi
te cumplir aquella parte de la decisión ó resolución fraudulenta contra
el demandante, que pueda cumplirse sin que resulte en perjuicio de es-
te último ninguna desigualdad en la imposición de las contribuciones.
Llegamos, por lo tanto, á la conclusión de que la Corte de Circuito
tuvo razón al expedir el *injunction* contra la imposición injusta, des-
igual y (en el sentido ya explicado), fraudulenta de contribuciones
hecha en perjuicio del demandante; pero nosotros creemos que en di-
cha orden debía haberse exigido, como condición para la expedición del
*injunction,* que el demandante pagase á los funcionarios á quienes
corresponda, una contribución sobre la base de un 75% de la tasación
hecha por los demandados. Las pruebas consideradas en relación con
las afirmaciones contenidas en la demanda, no demuestran que la di-
ferencia que resulta de la distinción hecha en contra de la propiedad
del demandante, realmente exceda de eso. La condición impuesta por
la Corte de Circuito, era el pago de las contribuciones con arreglo á la
tasación de 1897, por la Junta de Tasadores é Igualadores del Estado.
Dicha tasación, como hemos visto, fué anulada por la ley de 1897.
La orden del tribunal es que se modifique el "injunction," según se
ha indicado anteriormente, y que después de haberse hecho dicha mo-
dificación, se confirme el "injunction,"con las costas á los apelantes."

*Taylor* v. *Louisville & N. R. Co.,* 88 Fed. Rep., 373-374.

Parece que el tribunal inferior ha formado el concepto de
que la expresión usada en la ley (es decir, en el artículo 314,
tal como ha sido enmendado), "excepto por vía de correc-
ción de errores manifiestos," daría al tribunal de distrito ju-
risdicción para revisar y corregir los errores en que haya incu-
rrido la Junta de Revisión é Igualamiento; pero en cuanto á
esto, creemos, con arreglo á la debida interpretación de la ley,
que dicho tribunal se encuentra en un error. La ley, al decir
que las planillas constituirán el libro de tasaciones, etc., y se
presumirán definitivamente válidas por todas las cortes y
tribunales, no alterándose ni desestimándose, excepto, por vía
de corrección de errores manifiestos, se refiere á dichas plani-
llas cuando éstas se presentan como pruebas para probar al-

gún hecho en un procedimiento colateral, por ejemplo, en un caso de desahucio, etc. Entonces el tribunal las recibe como válidas, á menos que aparezca un error manifiesto en el contenido ó texto de las mismas, en cuyo caso se puede corregir dicho error.

Pero el artículo 310 dice claramente que la decisión de la Junta en todo asunto que le sea presentado, será firme. Nosotros creemos que esto impide completamente el que se apele ó revise, mediante *certiorari,* ó en otra forma ante los tribunales ordinarios, las decisiones dictadas por la Junta de Revisión é Igualamiento. Tales asuntos corresponden al ramo ó departamento ejecutivo del Gobierno, y éste ha constituído una junta, la cual, como se ha dicho en las decisiones de los tribunales de Nueva York, tiene poderes judiciales en todo aquello que se halla comprendido dentro del limitado círculo de su jurisdicción; y no ha habido la intención de convertir los tribunales ordinarios de la Isla, que han sido constituídos para juzgar y decidir las controversias entre partes, en árbitros ó inspectores de las listas de contribuciones formadas en la oficina del Tesorero, y corregidas por la junta nombrada para ese fin. El tribunal inferior dice con mucha razón, que no se hace mención de tribunales para ante los cuales se pueda apelar, y tampoco se menciona ningún tribunal que deba hacer la corrección de errores; y esto es cierto por la manifiesta razón de que no hubo la intención de conferir mediante los citados artículos de la Ley de Rentas, jurisdicción á las cortes de distrito, ni á otras cortes cualesquiera, sobre los asuntos de que se trata en dichas leyes. Si acaso existiera tal intención, sería un método del todo inusitado para conferir jurisdicción á los tribunales.

Cuando el Tesorero de la Isla, al hacer el reparto de las contribuciones ó al cambiar el reparto ya hecho, en los casos en que tal cambio sea necesario, haya procedido en su carácter oficial, y el asunto haya sido llevado ante la Junta de Revisión é Igualamiento, y dicha junta haya oído las partes que alegan haber sido perjudicadas, y haya resuelto el asunto, tal resolu-

ción es firme; y ningún tribunal tiene autoridad ordinaria-
mente, para intervenir en dicho asunto. Por supuesto, pu-
diera darse el caso de que surgiesen circunstancias extraor-
dinarias, en cuyo caso los tribunales podrían intervenir por
medio de un *injunction* ú otro auto extraordinario, para evitar
fraude ú opresión; pero no se pretende que el presente caso
sea de tal naturaleza.

Puesto que éste es el concepto que hemos formado de esta
cuestión de jurisdicción, no es necesario entrar en discusión
sobre las demás cuestiones presentadas en la excepción
previa del demandado; y puesto que la primera excepción,
alegando la falta de jurisdicción, ha sido correctamente pre-
sentada por el demandado, y debidamente admitida por el
tribunal inferior, debe confirmarse la sentencia de dicho tri-
bunal, sin hacer referencia á los demás puntos presentados en
el presente caso.

De acuerdo con estas ideas, debe confirmarse la sentencia
dictada por el tribunal inferior, con las costas á los apelantes.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asocia-
dos, Hernández, Figueras y Wolf.